SMITH v. PERINE et al.

(Supreme Court, General Term, Fifth Department. June 23, 1888.)

1. FRAUDULENT CONVEYANCES—MORTGAGES — CONSIDERATION — PURCHASE BY FIRM OF PARTNER'S INTEREST.

Where a partner buys the interests of his copartners in the firm, at their reasonable value, and gives a mortgage on his real estate to secure the purchase price, there is a good consideration for the mortgage, although he contemplated making an assignment for the benefit of creditors at the time, and does subsequently make it.

2. SAME—AGREEMENT BY SOLE HEIR TO SHARE DECEDENT'S ESTATE.

A son, on his death-bed, stated that he did not wish to make a will, but wanted his stock in a store, in which he was a partner with his father, divided equally between his father and mother, and the father, who was in possession of the stock, promised it should be done. The son died intestate, and without children, and the father subsequently executed a mortgage to secure the mother's share. Held, that the father was bound by the promise; but, irrespective of that question, having performed the request by executing the mortgage, he, and his creditors through him, are deprived of all his rights in such share, under the intestate laws.

3. SAME—HUSBAND AND WIFE—ASSIGNMENT OF LIFE INSURANCE POLICY.

Where the wife of a partner assigns absolutely and in writing, certain policies of insurance, which she holds upon her husband's life, to creditors of the firm as collateral security, taking a mortgage from her husband on his real estate to secure her, and agreeing by a collateral instrument in writing to reduce the amount of the mortgage to the amount of firm indebtedness secured by the policies subsequently to be ascertained, the debts having been paid, the policies surrendered and the mortgage satisfied, a creditor of the husband cannot claim that the mortgage was fictitious and fraudulent.

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—BY PARTNERS—PROVISION FOR FIRM AND PRIVATE CREDITORS.

A partnership made an assignment for the benefit of creditors, and subsequently one of the members made an assignment for the benefit of his individual creditors; providing that, after paying certain debts, the assignee should pay all the other debts of the assignor in proportion, according to the amount of assets. Held, that the latter assignment was intended for the payment of those debts of the firm only for which the assignor would remain individually liable after the firm assets were exhausted, and that there was no double payment directed.

Appeal from special term, Steuben county.

Action by Reuben O. Smith, against Henry W. Perine and J. Foster Parkhurst to set aside an assignment made by Perine to Parkhurst for the benefit of creditors. Judgment for defendants, and plaintiff appeals.

Argued before HAIGHT, BRADLEY, and DWIGHT, JJ.

W. H. Henderson, for appellant.    George T. Spencer, for respondents.

HAIGHT, J.    This action was brought by the plaintiff, a judgment creditor of Henry W. Perine, to have an assignment made by Perine to the defendant Parkhurst for the benefit of creditors set aside as fraudulent and void. It appears that Henry W. Perine resided at Bath, in this state, and was a member of the firm of Perine & Co., composed of himself and his brother, Clarence Perine, doing business in the city of New York; that on the 27th day of January, 1884, the members of this firm made an assignment for the benefit of creditors; that their assets amounted to $41,000, and their liabilities to $114,000. It further appears that the defendant Henry W. Perine was also a member of the firm of H. W. Perine & Co., composed of himself, Moses Davidson, William R. Sutton, and Samuel Carnocan, doing business at Bath; that after the insolvency of the New York firm was ascertained the defendant Henry W. Perine entered into an agreement with his copartners in the firm of H. W. Perine & Co., by which he purchased their interest in the firm for

$8,063.04,—he agreeing to assume and pay the firm indebtedness; and thereafter he delivered to the defendant Parkhurst the assignment in question, bearing date the 30th day of January, 1884. Before executing this assignment he executed and delivered to Davidson, Sutton, and Carnocan a mortgage upon his real estate for the sum of $8,063.54; also a mortgage to his wife, Elizabeth S. Perine, for the sum of $16,600.

It is contended, in the first place, that these mortgages were executed without consideration; that they are fictitious; and that consequently the assignment is fraudulent and void. As to the Davidson, Sutton, and Carnocan mortgage, the evidence establishes the fact that the mortgage was given to secure the payment of the purchase price of their interest in the firm of H. W. Perine & Co. No question is made but that their interest in the firm was of that value, or that the sale was not a proper one. This being the case, there was a good consideration for their mortgage. Perine had the right to buy out their interest in the firm, even though he at the time contemplated making an assignment, if he paid no more than what their interest was fairly and reasonably worth. These persons did not belong to the New York firm, and were not liable for its debts, and it was but reasonable and proper that they should be protected and fully secured for the full value of their interest in the Bath firm.

As to the McCullough mortgage, it appears that it was executed to McCullough to secure a claim which Mrs. Perine held against her husband, which she had assigned to McCullough before the mortgage was executed, and subsequently McCullough assigned the mortgage to Mrs. Perine. It appears that in 1873 the defendant was engaged in business with his son William H. Perine, under the firm name of Perine & Son; that his son was taken sick and died; and that shortly before his death, and during his last sickness, he sent for his father and mother to come into the room, and in the presence of Mr. Ferris, a witness, stated to them that he was not going to live, and that he wanted to make some arrangement in reference to his property. He then said that he did not want to make a will, but that he wanted his life insurance and his stock in the store divided equally between his father and mother. The defendant Perine then told him that he need not make a will; that it should be as he wished it. He thereafter died, at the age of 25 years, unmarried, leaving no will. After his death the insurance money was divided between the defendant Perine and his wife, and his interest in the store, amounting to $7,043.17, was, by an arrangement between the defendant and his wife, retained in the business, with the understanding that she could have it whenever she wanted it; that it so remained until the defendant found that it was necessary to make an assignment, when he executed the mortgage to McCullough to secure this claim, which his wife had previously assigned. It is contended that William H. Perine having died intestate and unmarried, that the defendant Perine, his father, became his sole heir at law, and that all of the interest of the intestate vested in him; that the talk before death about giving the mother one-half was not legal or binding. But, however, this may be, it appears that it was the wish of the son that his mother should be given one-half of his estate; that the father promised him to give her one-half; and that because of such promise the son did not make a will. ·The father thus became morally bound to do what he had promised his dying son that he would do. What he subsequently did was nothing more than he was morally bound to do, and we know of no rule of law which prevents a person from performing such a duty or promise, even though it could not be legally enforced. *Newman* v. *Nellis,* 97 N. Y. 285, 291. We do not, however, understand that the agreement could not be enforced. The defendant and son were merchants keeping a general retail store in the village of Bath. The defendant Perine was in possession, and, upon the death of his son, became the survivor. The defendant told his son that he need not make a will; that his

mother should have half of the property; that it was not necessary for him to make a will; that he would carry out his wishes. It appears to us that this brings the case within the rule laid down in the case of *Williams* v. *Fitch*, 18 N. Y. 546, in which the person making the promise was held bound.

As to the mortgage given to Mrs. Perine for $16,600, it appears that she held two paid-up policies of insurance on the life of her husband, amounting to $16,000; that there had accrued thereon, by way of premiums, etc., $600, making their total face value $16,600; that the firm of Perine & Co., of New York, had borrowed a large sum of money of one Augustus Juillard; and that Mrs. Perine had assigned these policies of insurance to Juillard by an assignment absolute in terms, but which was understood as between the parties to be held as collateral security for the repayment of the money so loaned to the firm of Perine & Co.; that before the making of the assignment the mortgage in question was given to Mrs. Perine in consideration for the assignment of the policies to Juillard, and at the same time a written agreement was executed by Mrs. Perine to the effect that the mortgage was given to secure her for the insurance policies referred to, and, the extent of the obligations not being known, it was covenanted that, when the same was ascertained, the mortgage should be reduced by indorsement to the true amount of the liabilities; that it was to have no other force or effect than to secure the *bona fide* legal indebtedness to her. The balance that was actually owing Juillard at the time the mortgage was executed was but the sum of $10,950.83. It further appears that Juillard was paid in full out of the assets of Perine & Co., the New York firm, and that thereupon he surrendered up and retransferred to Mrs. Perine the insurance policies in question; and that she thereupon satisfied this mortgage of record; and that this was all done before this action was brought. We do not understand this mortgage to be fictitious because of the amount of $16,600, for that was the amount of the policies assigned. The assignment was in writing, and was absolute in terms. And, furthermore, it appears that the New York business was managed by Clarence Perine, and that the defendant Perine did not at the time of the executing of the mortgage have accurate knowledge as to the balance that was owing Juillard. The situation appears to be fully explained by the written agreement simultaneously executed by Mr. and Mrs. Perine, and from it there does not appear to be any intent to hinder, delay, or defraud creditors by the covering up of property by a fictitious claim.

It is contended by the appellant that, under the fifth clause of the assignment, the assignee is directed to pay the individual debts of the assignor, together with his joint debts in the New York firm; that the assignment, in the case of Perine & Co., directed payment of certain claims in full; and that the assignment in this case, by including those debts, would operate as a double payment of them. Of course, if this construction should prevail, the assignment would be void. But an assignment is not necessarily fraudulent because a member of a firm appropriates his individual property to the payment of the debts of the firm of which he is a member. *Wheel Co.* v. *Fielding*, 101 N. Y. 504–510, 5 N. E. Rep. 431; *Haynes* v. *Brooks*, 42 Hun, 528.

The assignment must be construed in connection with the surrounding facts. The defendant Perine and his brother Clarence, composing the New York firm of Perine & Co., had recently made a general assignment for the benefit of the creditors of that firm. The members of that firm were liable individually to its creditors for any sum that should remain unpaid after the assets of the firm were distributed. The language of the fifth clause of the assignment is that, "after paying and discharging all the aforesaid debts and liabilities as above provided, the said party of the second part shall pay in full all the other debts and liabilities of the party of the first part; * * * and, if such residue be not sufficient to pay and discharge all such debts and liabilities in full, then the said party of the second part shall distribute the said

residue of such proceeds among. the said other creditors of said party of the first part ratably and in proportion." It appears to us that, by the language used in this clause, it was intended to embrace the debts of the New York firm of Perine & Co., for which the defendant Perine was individually liable, that remained after distributing the assets of that firm. If we are right in this construction, then no double payment is directed, and the assignment would not be fraudulent. As to whether the individual debts of the defendant Perine should, under this clause, be paid before the debts of the New York firm for which he is individually liable, we express no opinion; for that question will more properly arise upon the distribution of the assets by the assignee.

No other question is presented which we deem it necessary to discuss; and, in view of the conclusion which we have reached, it becomes unnecessary to consider the question as to whether the plaintiff or the Towanda Bank had assented to the assignment, and become parties to it by filing their claim and accepting a dividend. The judgment should be affirmed, with costs. So ordered.

BRADLEY and DWIGHT, JJ., concurred.