(165 App. Div. 748)

### WALTER FARRINGTON TILING CO. v. HAZEN et al.

(Supreme Court, Appellate Division, Second Department. January 29, 1915.)

1. FRAUDULENT CONVEYANCES (§ 95*)—CONSIDERATION—SUFFICIENCY.
    Where a transfer of corporate stock by a husband to his wife was in consideration of an indebtedness from him to her for money lent by her to him, the court, in a suit to set aside the transfer as fraudulent against his creditors, will not consider the sufficiency of the consideration.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 243–288; Dec. Dig. § 95.*]

2. FRAUDULENT CONVEYANCES (§ 95*)—CONSIDERATION—SUFFICIENCY.
    A father, who had made a will giving his property to his son, informed the son that he desired that the son's wife should have an equal share in the property, and would make a new will accordingly, unless the son would agree to give his wife an equal share. The son agreed, and received the property under the will, and the proceeds thereof were used in the purchase of real estate subject to a mortgage. The son thereafter

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

transferred the property to his wife in accordance with his father's request. *Held*, that the conveyance to the wife was supported by a valuable consideration under the rule that the discharge of a moral obligation to perform a duty or promise is sufficient to sustain a conveyance of property of a debtor as against his creditors, and the creditors could not set aside the conveyance as fraudulent as against them.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 243–288; Dec. Dig. § 95.*]

Appeal from Trial Term, Westchester County.

Action by the Walter Farrington Tiling Company against Frank C. Hazen and others. From a judgment for plaintiff, defendants appeal. Reversed on questions of fact and law, and new trial granted.

See, also, 150 N. Y. Supp. 1117.

Argued before JENKS, P. J., and BURR, STAPLETON, RICH, and PUTNAM, JJ.

A. W. Hendrickson, Jr., of Ossining, for appellants.
William Godnick, of New York City, for respondent.

BURR, J. This action is brought by a judgment creditor of Frank C. Hazen to set aside a conveyance made by him to Anna L. Hazen, his wife, of certain property situated at Harmon, in the county of Westchester. This conveyance was made on July 3, 1912. Plaintiff also seeks to set aside a transfer made upon the same day by said Frank C. Hazen to said Anna L. Hazen, of 57 shares of the capital stock of the Frank C. Hazen Company. Each of these transfers was attacked upon the ground that it was fraudulent as against plaintiff, a judgment creditor. From a judgment in plaintiff's favor, defendants appeal.

It appears that the stock referred to is without value, and the vital question in the case is as to the validity of the conveyance of the real property. The court has found upon sufficient evidence that, during the year 1911, plaintiff loaned to said Frank C. Hazen $700, and thereafter, and on the 23d day of October, 1913, recovered a judgment against him by reason thereof, under which judgment an execution has been issued and returned unsatisfied. The conveyance of the real property which is the subject-matter of this action, and also the transfer of the stock, were made after this indebtedness accrued. We think that the evidence fairly establishes that the effect of these transfers was to render the grantor named therein insolvent, although there is some testimony to the contrary.

[1, 2] There is testimony that the transfer of the stock was made in consideration of an indebtedness from Hazen to his wife for money loaned by her to him. Under the circumstances, we do not consider its sufficiency. There is no evidence that Anna L. Hazen knew, at the time of these transfers, that defendant was in financial difficulty. Such evidence as there is on this point is to the contrary. It is conceded, however, that no consideration for the conveyance of the real property was paid at the date of the execution of the deed therefor; and the question to be decided, and the only question in this case, is whether there was a valid and sufficient consideration therefor. The evidence

on this point comes from the defendant Frank C. Hazen and his wife, who were called as witnesses by the plaintiff. It is substantially this: The father of Frank C. Hazen had made a will by which he gave to him a legacy of $2,500, and an interest in certain real property of the value of about $3,000 more. He died in the spring of 1906. Late in the fall of 1905, he said to defendant, in speaking in commendation of his wife:

"Now I have made out my will, leaving you something, but I want your wife to have a share, an equal share of what I am going to leave you, because I think so much of her that I request this, and, if you are sure of the fact that you will do as I ask you to, I won't bother to make out any new will."

And the son replied, "Father, I will."

Subsequently, Frank C. Hazen received his legacy, and, in addition, the proceeds of the sale of some real estate, amounting altogether to about the sum of $5,000. In the fall of 1906, after consulting with his wife, they agreed to purchase a piece of land at Harmon and erect a house thereon. The title to the land so purchased was taken in the name of Frank C. Hazen, and thereafter the house was constructed. The value of the house and land about equaled the sum received by him. Subsequently, a mortgage was placed upon the property for $2,500, the proceeds of which Frank C. Hazen seems to have received and used. He testified that, as he then felt that he had practically used up all of the legacy that properly belonged to him, he told his wife that he was going to transfer the property to her, subject to the said mortgage, in accordance with his father's request, and this he did on July 3, 1912. We think that this testimony, uncontradicted and unimpeached, was sufficient to establish a valuable consideration for such conveyance.

"The discharge of a moral obligation to perform a duty or promise * * * is sufficient to sustain a conveyance or transfer of property by a debtor, as against the debtor's creditors." 1 Moore on Fraudulent Conveyances, 295; Smith v. Perine, 49 Hun, 605, 1 N. Y. Supp. 495; Ocean Nat. Bank v. Hodges, 9 Hun, 161; Syracuse Chilled Plow Co. v. Wing, 85 N. Y. 421; McCartney v. Welch, 51 N. Y. 626; Norton v. Mallory, 63 N. Y. 434; Silvers v. Potter, 48 N. J. Eq. 539, 22 Atl. 584; Holden v. Banes, 140 Pa. 63, 21 Atl. 239.

The facts in the case of Smith v. Perine, supra, closely resemble the facts here under consideration. In that case, it appeared that William H. Perine was engaged in business with his father, Henry W. Perine, and was the owner equally with him, and in possession of, the capital stock thereof. Before his death, he stated to his father that he did not want to make a will, but that he wanted his life insurance and his stock in the store divided equally between his mother and his father, and his father told him that he need not make a will, that it would be as he wished. He died intestate. Subsequently, Henry W. Perine became insolvent, and finally made an assignment for the benefit of creditors. Prior thereto, he had executed a mortgage, which had been assigned to his wife for an amount which represented one-half of the value of his son's interest in the business at the time of his death. In an action to set aside this and other conveyances, the court said:

"It is contended that, William H. Perine having died intestate and unmarried, the defendant Perine, his father, became his sole heir at law, and that all

of the interest of the intestate vested in him; that the talk before death about giving the mother one-half was not legal or binding. But, however this may be, it appears that it was the wish of the son that his mother should be given one-half of his estate; that the father promised him to give her one-half; and that because of such promise the son did not make a will. The father thus became morally bound to do what he had promised his dying son that he would do. What he subsequently did was nothing more than he was morally bound to do, and we know of no rule of law which prevents a person from performing such a duty or promise, even though it could not be legally enforced."

In McCartney v. Welch, supra, the father-in-law of Welch conveyed to him certain real property upon a verbal agreement that he would dispose of the real property and use the avails in his business, and at some future day should pay the entire proceeds to his wife. Welch did dispose of the lands, and invested the proceeds in his business; and in June, 1860, they accounted together and settled the amount due, and Welch gave his note therefor. At that time he was insolvent. He subsequently made an assignment, in which this indebtedness was preferred. In an action to set aside the assignment, the court held that the promise by Welch was for a good consideration and imposed an equitable and moral obligation upon him which he might voluntarily perform, and refused to set the assignment aside.

In Norton v. Mallory, supra, plaintiffs brought an action to set aside as fraudulent a deed from Russell B. Mallory to his son Fred. E. Mallory. It appeared in this case that the property originally belonged to Russell B. Mallory's mother, and that she refrained from making a will in favor of her grandson, by the promise of her son that he would subsequently convey said property to him. In that case the court said:

"If the mother was induced to forego making a will in favor of her grandson by the promise of Russell B., equity would enforce the obligation on the ground of fraud. * * * But if the trust could not have been enforced, yet, Russell B. Mallory having executed it, the title thus made and supported by the equities in the case is paramount to any equities of general creditors."

In the case at bar, plaintiff was only a general creditor at the time of the conveyance.

In Holden v. Banes, supra, the court refused to set aside a mortgage executed under the following circumstances: Alfred Vezin, the husband of the mortgagor, in his lifetime was indebted in a very large sum to certain persons to whom he had consigned goods manufactured by him for the purpose of sale, and against which they had made advances. Mrs. Vezin promised to secure the payment of this indebtedness by a mortgage upon her individual property. After his death, and while insolvent, she fulfilled such promise and gave such mortgage. It was conceded that her original promise was void by reason of her coverture. But the court held that the promise so made constituted a sufficient moral consideration to support such promise, and the mortgagor could, after coverture had ceased, execute such mortgage, which would be valid against her creditors. In its opinion the court say:

"It is not denied that the claim of Colladay, Trout & Co. against Mr. Vezin was bona fide, and for an honest debt. * * * It was urged, however, that Mrs. Vezin could not make a binding contract during coverture. This is

true, and she would be entitled to avoid such contract." But "such contract imposed a moral obligation upon her, which was a sufficient consideration for a subsequent promise made after discoverture."

Within these authorities, we think that plaintiff failed to establish that the conveyance of the real property was made without sufficient and valuable consideration.

The judgment should be reversed upon questions of fact as well as of law, and a new trial granted; costs to abide the final award of costs. All concur.