CARTER, Plaintiff in Error, v. MILLS *et al.*, Defendants in Error.

1. In order that a third party, not an original party to a suit, may be permitted to come in and set up his claim to the subject matter in controversy or his defence, it is not required that he should be a *necessary* party.
2. Where a party seeks the specific enforcement of a contract to convey land, and a third person, not a party to such suit as originally instituted, who claims the same land by an alleged superior title under the person against whom such specific enforcement is sought, desires to be made a party, he may well be permitted to come in and defend; if a decree as between the original parties to the suit would affect his rights injuriously—as by casting a shadow on his title—he would have a *right* to be heard.
3. One M., residing in the year 1856 in the state of California, owned certain lots adjoining the city of St. Joseph, Missouri. He had in St. Joseph an agent authorized to sell said lots for a specific sum. An uncle of M., a surgeon in the United States army, stationed at Fort Columbus, New York harbor, was also made acquainted with his wish to dispose of said lots. An offer by one G. to purchase said lots was transmitted through said uncle to M. in California. M. thereupon executed a deed dated in California, October 6, 1856, conveying said lots to G., and forwarded the same by mail to the uncle at Fort Columbus, where it was received by him about December 1, 1856, and immediately handed over to Gibbs upon his paying the purchase money. In the mean time, the agent of M. at St. Joseph had, on the 20th of October, 1856, in good faith, entered into a written contract to sell said lots to one C. C., on the 29th of Nov'r, 1856, instituted a suit against M. for the specific enforcement of this contract. M., being a nonresident, was notified by publication, but made default. G., on his own motion, was

Carter v. Mills.

admitted to defend, against the objection of the plaintiff. *Held*, that G. was, under the circumstances, properly admitted to defend; that having the legal title and a prior equity—the acceptance of the offer of G. being prior to the contract with C.—his title would prevail over the naked agreement to convey to C.

4. An order of publication against absent defendants does not operate as notice to purchasers until it is executed.

*Error to Buchanan Court of Common Pleas.*

The facts sufficiently appear in the opinion of the court.

*Loan*, for plaintiff in error.

I. The court should have overruled the motion filed by Gibbs to be made a party defendant in this suit. No authority has been shown to authorize such a proceeding. If he had the legal title, as he asserts, a judgment against Mills could not affect him. He had no standing in a court of equity. (Gamble v. City of St. Louis, 12 Mo. 617; Taylor v. Ulrici, 19 Mo. 89; Drake v. Jones, 19 Mo. 428; 17 Mo. 562.) If he had not the legal title, then he is not in a position to question the plaintiff's rights. This proceeding is not the way to settle the prior equity between Carter and Gibbs. (20 Mo. 222; 24 Mo. 87.) If the doctrine contended for be correct, then a final conveyance to a third person would always be sufficient to defeat an action for a specific performance of a contract for the sale of land, however fraudulently obtained or insufficient it may be as against the plaintiff. The argument is this. The plaintiff can not question the validity of Gibbs' deed, because the plaintiff has established no right against Mills, and he can establish no right against Mills because Gibbs' deed is a bar. Can this be law? Or is the plaintiff authorized to establish his right against Mills and then be permitted to question Gibb's title? In such case Gibbs' deed, if he had one, is *prima facie* good against the world, and, if not set aside by Mills or his representatives, will hold the property. In such a case there can be no trust resulting in favor of the plaintiff, because it does not appear that Gibbs had knowledge of Carter's rights. If

Gibbs' deed was fraudulent as against Mills, no trust would result in favor of the plaintiff, because in equity Mills as against Gibbs is entitled to have the deed cancelled. The motion to strike out Gibbs' answer should have been sustained.

II. The letter to Dr. Mills should have been excluded. A. J. Mills was an adverse party to the plaintiff. His co-defendant Gibbs could not call him as a witness; nor would his declarations be admissible. The exhibit filed with Sugwell's deposition, purporting to be a copy of the original deed from Mills to Gibbs, was improperly admitted in evidence. The declarations of law asked by plaintiff should have been given. Those given for defendant should have been refused.

*Hall,* for defendants in error.

I. Gibbs was properly made a party. If Gibbs' title is superior to Carter's, then he is interested in the suit adversely to plaintiff, because Carter, by obtaining a decree, would get a perfect title on record, and, by selling to an innocent purchaser for value, could defeat Gibbs' title. If Gibbs' title is inferior to Carter's, still Gibbs is interested in the suit, because in the case last supposed he and not Mills would be entitled to the purchase. (11 Wheat. 304; 2 Brock. 42; 16 Mo. 249; 3 Cod. R. 172.) Gibbs, having received his deed after the commencement of this suit, was properly made a partner under section 24 of article 11 of the practice act. Gibbs had an interest in the suit. (15 Mo. 640; Adams' Eq. 166; 2 Sug. Vend. 98.) Carter was not injured by making Gibbs a party. The court was thereby enabled to decide the whole controversy. The deed to Gibbs took effect from its date, October 6, 1856. Plaintiff did not contract until October 20, 1856. (4 Kent, 454; 2 Mass. 447; 9 Mass. 295; 15 Wend. 658; 13 Johns. 284; 1 N. H. 358; 4 Day, 66; 5 Ired. Eq. 304.) If it took effect from its delivery only, still it is good against Carter. Gibbs has the legal title; he acquired it without knowledge of Carter's equity; having paid the purchase money, his equity is at

least equal to Carter's, and having the legal title his rights are superior to Carter's. The letter to Dr. Mills is sufficient of itself to defeat plaintiff's action. Gibbs' equity is superior, being prior in point of time. Carter, having paid no part of the purchase money, is to be taken as having contracted with notice of Gibbs' prior contract. (Paul v. Fulton, 25 Mo. 163.) The execution of the deed was sufficiently proved. (Clardy v. Richardson, 24 Mo. 296.) The question of *lis pendens* does not arise in this case. No notice until process is served or publication completed. (4 Bibb, 499; 9 Paige, 513; 15 Ala. 24; 2 Rand. 104; Adams' Eq. 154; 1 Sto. Eq. § 406.)

NAPTON, Judge, delivered the opinion of the court.

Andrew J. Mills was the owner of ten acres of land, laid off into lots, adjoining the city of St. Joseph. He resided in California, but he had an agent named McClelland, in St. Joseph, who was authorized to sell these lots for one thousand dollars. His uncle, Dr. Madison Mills, a surgeon in the United States army, stationed, at the date of this transaction, at Fort Columbus, New York harbor, was also made acquainted with his wish to dispose of these St. Joseph lots, and a correspondence ensued between the uncle and nephew which resulted in a sale of the lots for $700, to M. Gibbs, and a deed from A. J. Mills to Gibbs, dated in California on the 6th of October, 1856. This deed was forwarded by mail to Dr. Mills, at Fort Columbus, where it was received about the 1st of December, 1856, and immediately handed over to Gibbs upon his payment of the purchase money. Gibbs had the original deed forwarded by mail to the recorder of deeds at St. Joseph, to have the same placed on record, but it appears that the letter was never received by the clerk or recorder to whom it was directed.

Meanwhile, McClelland, as agent for Mills, on the 20th day of October, 1856, made a contract in writing, with the plaintiff, Carter, for the sale of these lots at the price of

$1,000. This suit is brought against Mills to compel a specific execution of this contract, and to get a decree for the title in Carter upon his paying the one thousand dollars. Mills, being a nonresident, was notified by publication, but made default, and Gibbs moved to be admitted to defend and set up the facts as we have just stated them. This the plaintiff objected to, but the court allowed it, and the title, as between Gibbs and the plaintiff, was examined, and the result of the investigation was the establishment of Gibbs' title and the refusal of the court to decree a specific performance against Mills.

This permission of the court to let in Gibbs as defendant presents the main question in the case. The plaintiff insists that the proceeding is without precedent; that if Gibbs has the legal title, any decree which he may obtain against Mills will not affect it, and therefore Gibbs has no right to interplead; and if Gibbs' title depends upon his superior equity, this is not a proceeding in which it can be considered.

This objection to the proceedings of the court, coming from the quarter it does, certainly presents to us the appearance of a singular anxiety for self-sacrifice in order to preserve order and regularity in judicial proceedings. The plaintiff asks the interposition of the court to procure him a title, for which he offers to pay one thousand dollars, and brings the money into court, and yet he considers it entirely immaterial to his case whether this title shall be a good one or a worthless one. Gibbs proposes to have this question settled, and therefore applies to the court for leave to come in and defend. But the plaintiff objects, and says it matters not whether Gibbs has the title or not; that he asks no relief against him ; that he is willing to take a decree against Mills alone, pay the thousand dollars, and take a worthless title.

To this dilemma the plaintiff's objections must inevitably lead, unless, indeed, some advantage is expected to be derived from a decree of the title in him in a subsequent controversy with Gibbs. The question, then, presents itself,

will the court, on the hypothesis that Gibbs' title is valid and
a decree would in nowise affect it, perform the vain and nu-
gatory act of decreeing a title from Mills when he has already
parted with it to Gibbs?   Such a course can only tend to
multiply suits and protract litigation.   If, on the other hand,
a decree would affect Gibbs' rights to the land in any way,
it is clear that Gibbs has a right to be heard.   If the title
thus put on the record would have the effect of casting a
shadow on Gibbs' title, this circumstance alone has furnished
courts of equity with a considerable branch of their juris-
diction.   The facts set up by the defendant Gibbs do not
show an absolute title in him on the face of the conveyance,
which facts *in pais* might not and could not overturn.   On
the contrary, the merits of the respective claims depend ob-
viously upon the proper construction of the letter of Mills to
his uncle enclosing the deed, and the other acts and circum-
stances attending the delivery of the deed.

It must be borne in mind that the plaintiff in this case does
not ask any compensation in damages against Mills for a
breach of his contract.   He asks only for the title, for a de-
cree of the title to the lots.   If a court of equity, in such a
proceeding, is satisfied, from the answer of the defendant, or
from the interposition of a third person, who has the title,
that the decree prayed for would be absolutely nugatory, will
the court still proceed to perform a nugatory act?   Why
should the plaintiff insist on it, when it will be of no advan-
tage to him?

It is not the law, that in order to admit a third party, not
an original party to a suit, to come in and set up his claim
or his defence, that he must be a *necessary* party—one with-
out whom the suit could not regularly have progressed.   In
Hopkins v. Page, 1 Brock, 42, Judge Marshall observes:
"All persons having distinct interests must be brought into
court, but where the interest of one person is involved in
that of another, and that other possesses the legal right, so
that the interest may be asserted in his name, it is not, I
think, always necessary to bring both before the court.   Thus,

a trustee may sue, without naming the *cestui que trust* as a party; an executor or administrator may sue without naming legatees or distributees; and the obligee in a bond, where it is not by law assignable, may sue, or the equitable assignee may sue in his name, without being named himself as a party. This may, I think, be done in a court of equity as well as in a court of law. The person having the equitable interest, if the suit be not really brought for his benefit, *may insist on being made a party*, and the court will direct it; but I do not think the omission of persons in this situation any objection to the suit." The case now under consideration is not one of the cases put by the chief justice in illustration of his position, but the observation is cited to show that the rule of practice allows parties to be heard who might, if they saw proper, permit the case to progress without their interposition. Here, the owner of the title—for we assume for the purposes of this inquiry that Gibbs has acquired the title from Mills—voluntarily comes forward and asserts his title. Whether it is good against the plaintiff is the question he proposes and is willing to have tried. He was not a necessary party, and the case, so far as Carter and Mills are concerned, might have proceeded to a decree; but how can the plaintiff be possibly injured by settling the whole controversy at once? As Gibbs has come forward and explained his title to the lots which plaintiff asks a decree for, and Gibbs' title as well as the plaintiff's is decreed from the defendant Mills, must the court close its eyes to the fact and proceed to perform a mere vain ceremony, and one which must, upon any reasonable calculation of plaintiff's motives, lay the foundation for another suit? We fully appreciate the propriety and necessity of order and formality in judicial proceedings, and are aware that general rules for the conduct of suits—although they may in exceptionable cases lead to some inconvenience and expense—must not be abandoned. But we have not been satisfied that the course pursued in this case is a breach of these rules; on the contrary, it seems in accordance with the spirit of our practice act.

We shall therefore proceed to consider the points upon which the merits of the case turned.

It is plain that Gibbs has the prior legal title, if the deed of Mills is to be construed as taking effect from its date, and this depends upon the circumstances attending the execution and delivery to Dr. Mills. We copy the letter from Mills to his uncle Dr. Mills enclosing the deed, which is dated Louisa county, California, 6th October, 1856 : " I received your letter dated September 1st on the 4th inst., and Mr. Montgomery Gibbs' proposition to purchase ten lots in St. Joseph gardens, Missouri. My price has always been $1,000, but they have been an expense rather than a profit, so I concluded to accept his offer. If seven hundred dollars is low for the property, I may do as well with it as the lots, and have it on hand where I can look to it. I send the deed for the lots, as I wish to dispose of what scattering property I have in different places, so as to get my little means together so that I can use them. I think it best even at a loss. Yours, &c., &c., A. J. Mills."

The court instructed the jury that " If the defendant Mills, in pursuance of an offer of defendant Gibbs, made and executed a deed for the land described in plaintiff's petition on the 6th October, 1856, and sent said deed by mail to Dr. Mills in New York, to be delivered to said defendant Gibbs, and that said deed was delivered to said Gibbs in December, 1856, and that Gibbs thereupon paid the purchase money, the plaintiff can not recover."

It is well settled that a delivery of a deed to a stranger for the use of the grantee is a good delivery, and where the deed is to be handed to the grantee upon his compliance with a condition, the deed still takes effect from its date when the condition is complied with and the deed is thereupon delivered. It would be different if the deed is delivered to a stranger subject to the future control of the grantor.

The case of Belden v. Carter, 4 Day, ——, affords an illustration of the application of the rule. There the grantor said : " Take these deeds. If I never call for them, deliver

over one to P., (defendant's wife,) and the other to Noble, after my death. If I call for them, deliver them up to me." The court said: "It was a delivery of a writing as a deed to the use of the grantee, to take effect at the death of the grantor, deposited in the hands of a third person to hold till that event happened, and then to deliver it to the grantee. The legal operation of this delivery is, that it became the deed of the grantee presently; that W. held it as trustee for the use of the grantee; that the title became consummated in the grantee by the death of the grantor, and that the dee took effect by relation from the time of the first delivery."

If this principle is a correct one, and we apply it to the facts of this case, it will be seen at once that on the 20th October, 1856, Mills' agent, McClelland, could make no contract affecting these lots, since his principal had previously parted with his title. But if the doctrine of relation, as stated in the case of Belden v. Carter, should be thought inapplicable, it is not perceived that the result would be different. There is no charge of want of good faith in this transaction on the part of either the principal, Mills, or his agent, McClelland. Each acted, no doubt, in ignorance of what the other was doing. If Mills had known of McClelland's contract to sell his lots for a thousand dollars, he of course would not have sold to Gibbs for seven hundred. The letter of Mills and the accompanying deed must undoubtedly be regarded as an acceptance of the offer of Gibbs made through Dr. Mills, and when the deed was received and the money paid, the legal title was then, at all events, in Gibbs, and the contract on which it was based was prior in time to that made with the plaintiff. Gibbs, then, had the legal title and a prior equity, which would surely prevail over a naked agreement to convey.

We do not see how the doctrine of *lis pendens* has any bearing on the case. The plaintiff's suit was commenced on the 29th November, 1856, previous to the reception of Mills' deed in New York, which was about the 1st of December. But there was no actual notice to Mills, and the notice by

publication could not have been completed before the consummation of the negotiation between Mills and Gibbs. Neither Mills or Gibbs could have had notice, either actual or constructive. An order of publication against absent defendants does not operate as notice to purchasers until it has been executed. (Hayden v. Bucklin, 9 Paige, 513; Clevenger v. Hill, 4 Bibb, 499.)

The judgment of nonsuit is affirmed; Judge Ewing concurring.