PATRICK HENRY ET AL. V. W. H. PHILLIPS, ADMINISTRATOR.

No. 2272. Decided December 11, 1912.

**Deed—Delivery in Escrow.**

The owner executed and acknowledged a deed conveying certain land to his two step-daughters, which he enclosed in a sealed envelope and delivered to the cashier of a bank for safe keeping, saying that it was a deed of some land to them, to be delivered to them after his death. Held:

(1) That these facts showed a delivery of the deed which, whether the grantor retained any control over the instrument or right to countermand it or not, had the same effect on his death as though it had then been delivered to the grantees with a reservation to the grantor of the use of the property during his life. (Pp. 460-463.)

(2) That delivery in person to the grantees was not essential to pass the title. (Pp. 463, 464.)

(3) That the proof, here considered, showed nothing evidencing a different intent by the grantor. (Pp. 464-466.)

(4) That on his death the title became consummate in the grantees, taking effect as of the instrument. (P. 467.)

(5) That evidence that the grantor offered the property for sale after making the deed was immaterial. (P. 466.)

(6) That an indorsement on the envelope of the names of the grantor and grantees was also immaterial. (Pp. 466, 467.)

(7) That the evidence, being without conflict, showed delivery of the deed as matter of law, and required judgment in favor of the grantees in an action against them by the administrator to cancel the deed. (P. 467.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Fannin County.

Phillips, as administrator, sued Henry and others. Defendants had judgment in the trial court, and obtained writ of error upon this being reversed and rendered in favor of the administrator on his appeal.

*Thos. P. Steger, J. G. McGrady* and *Mark McMahon,* for plaintiffs in error.—The evidence showed a delivery of the deed. Griffin v. Payne, 92 Texas, 293; Chew v. Jackson, 18 Texas Civ. App., 678; Burg v. Young, 35 Am. St., 186; Trask v. Trask, 48 Am. St., 446; Brown v. Westfield, 53 Am. St., 532; Devlin on Deeds, secs. 262, 269, 275, 280.

This was not affected by subsequent conduct or declarations of the grantor. Burg v. Young, 35 Am. St., 186; Mooring v. McBride, 62 Texas, 309; McDow v. Rabb, 56 Texas, 159; Gilbert v. Odom, 69 Texas, 670; Kennedy v. Upshaw, 64 Texas, 411; McElroy v. Phink, 97 Texas, 147; Wilson v. Wilson, 6 Mich., 9; Jones v. Taylor, 6 Mich., 364; Ward v. Ward, 37 Mich., 253; Jackson v. Combs, 113 S. W., 119; Teagarden v. Patten, 48 Texas Civ. App., 571; DeGraffenreid v. Thomas, 14 Ala., 681; Perry v. Graham, 18 Ala., 822; Fontaine v. Beers, 19 Ala., 722; Nelson v. Iverson, 17 Ala., 216; Walker v. Blassingame, 17 Ala., 810; Hadden v. Powell, 17 Ala., 314.

*S. F. Leslie* and *Richard B. Semple,* for defendant in error, cited: —Summerhill v. Hanner, 72 Texas, 229; Stone v. French, 1 Am. St., 237; Tiedman on Real Property, sec. 814; Shultz v. Shultz, 50 Am. St., 191; Soell v. Hadden, 85 Texas, 182; 1 Elliott on Evidence, sec. 568; Hayes v. Baylan, 33 Am. St., 326; Ponter v. Woodhouse, 21 Am. St., 133.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This suit was begun in the District Court of Fannin County on January 26, 1907, by the administrator of T. J. Patillo, deceased, against Mrs. Mary Henry and Josephine Ridings and their husbands, D. P. Henry and C. C. Ridings, to cancel a certain deed of date May 9, 1905, executed by the said Patillo to Mrs. Mary Henry and Josephine Kearnes, now Ridings, and conveying about 81 acres of land situate in Fannin County with full and particular description thereof by references to the survey and metes and bounds, and to quiet said estate in its title to and possession of said premises.

Plaintiff alleged that on May 9, 1905, T. J. Patillo signed and executed the deed in question to Mrs. Mary Henry and Josephine Kearnes, now Ridings, purporting to convey the land therein described, and retained possession of the deed until his death on the 13th day of September, 1906. That prior to his death, Patillo, being undecided whether or not he would deliver the deed to the grantees therein, deposited the deed for safe keeping with the First National Bank of Bells, Grayson County, where it remained undelivered to said grantees until after the death of said Patillo.

Defendants in substance alleged that the grantor in said deed, T. J. Patillo, bore great love and affection for the grantees in said deed, who were the daughters and only children of his deceased wife, and felt under obligations to them, which he often expressed, and he intended to convey to them certain tracts of land. That pursuant to such intention, Patillo, on May 9, 1905, caused the deed in question to be written, signed and executed same conveying the land therein described to the defendants, Mrs. Mary Henry and Josephine Kearnes,

now Ridings, and about June 1, 1905, delivered said deed in person to one S. D. Simpson, cashier of the First National Bank of Bells, Texas, and instructed said Simpson to hold the deed until Patillo's death and then deliver it to Josephine Kearnes and Mary Henry. That the deed so executed and delivered to Simpson in escrow was an absolute and unconditional deed and conveyed the property therein described to the grantees named.

Defendants further allege that, being the owners of the land in controversy, upon the death of their grantor, T. J. Patillo, which occurred on September 13, 1906, they are entitled to the rents arising out of the use of said land, and claim the sum of $700.00 as accrued rents under appropriate allegations.

The cause was tried with a jury, the verdict being for defendants against plaintiff upon the issue of the delivery of the deed, and upon the issue of rents the sum of $369.00.

Upon the second appeal of the case, the judgment of the lower court was reversed and rendered by the Court of Civil Appeals of the Sixth District, in favor of the administrator of T. J. Patillo's estate.

The case as it comes to this court presents but one question of law for our decision. The trial, so far as is disclosed by the record, was had without any exceptions to the court's ruling, and so far as we are able to judge there is no conflicting evidence upon any issue of fact in the case. The question of law is whether or not T. J. Patillo, after he executed the deed to Mrs. Mary Henry and Josephine Kearnes to the land therein described and deposited it in the bank for safe keeping and for delivery to the grantees after his death, thereby parted with his title to said land.

The Court of Civil Appeals makes the following findings of fact, which for the purpose of clearness we desire to quote:

"The deed was dated May 9, 1905, and its execution was duly acknowledged by Patillo on the same day. It was as follows: 'Know all men by these presents, that I, T. J. Patillo, county of Fannin, State of Texas, for and in consideration of the sum of $25.00 to me in hand paid by Mrs. Mary Henry, wife of Pat Henry, and Miss Josephine Kearnes, the receipt of which is hereby acknowledged, and the further consideration of the love and affection I have for the said Mary Henry and the said Josephine Kearnes, they being my step-daughters, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Mrs. Mary Henry and Miss Josephine Kearnes, of the county of Fannin, State of Texas, all that certain tract or parcel of land situated on the waters of Caney creek in Fannin county, about ten miles northwest of Bonham (and further describing the land in controversy) ; Mrs. Mary Henry is to have an undivided two-thirds in the whole of the above described land and Miss Josephine Kearnes the other one-third undivided interest.' Some time in the spring of 1905, a sealed envelope, afterwards found to contain the deed, with the words 'after ten days return to Pat Henry, County Clerk, Fannin County, Bonham, Texas,' printed on the left-hand top thereof, and endorsed in Patillo's handwriting, 'T. J. Patillo or Mary Henry and Miss Josephine Kearnes,' was delivered by Patillo

to Simpson, then the cashier of a bank at Bells, Texas. Simpson was the only witness who testified as to the circumstances accompanying the delivery to him of the deed. His testimony, so far as material, was as follows: 'I never saw the deed from T. J. Patillo to Mrs. Mary Henry and Miss Joe Kearnes, but as I remember Mr. T. J. Patillo handed me a large envelope, saying that it contained a deed of some land to Miss Joe Kearnes and Mrs. Pat Henry. I never delivered the deed to anybody. I was acquainted with the said T. J. Patillo. I received the envelope in which Mr. T. J. Patillo told me there was a deed, from him, the said Patillo, as cashier of the bank, for safe keeping. I received the envelope from Mr. T. J. Patillo, in which he said there was a deed, some time in the spring of 1905, but I do not remember the exact date. I was at that time cashier of the First National Bank at Bells, Texas. There are so many papers put in the bank for safe keeping, it is impossible just what each and every one person says when they leave the papers. I can not state the exact words, but I believe I am correct when I say that he says: ''Simpson, here is a deed of some land to Miss Joe Kearnes and Mrs. Pat Henry, that I want to lay away in the vault for safe keeping, and the deed to be delivered after my death to them.'' I do not remember that he said anything about reserving any right to recall the deed.' In the latter part of August, 1905, Patillo authorized the witness Springfield, a real estate agent, to sell the land for him, and frequently thereafterwards talked with said Springfield about the prospect of effecting a sale thereof. In the spring of 1906 the witness Dover proposed to buy a part of the tract. Patillo declined to sell him a part but offered to sell him the entire tract. Patillo died September 13, 1906. About September 15, 1906, the envelope containing the deed was delivered by the witness Blanton, who had succeeded Simpson as cashier of said bank, to Mrs. Mary Henry, who had same spread upon the records of Fannin County, Texas. It was shown that Patillo spoke of the grantees named in the deed as his daughters and was very kindly disposed toward them. It was further shown that in the spring of 1906, in reply to a letter written to him by a daughter of Mrs. Mary Henry, in which she stated that if she should ever want to live in the country she would like to live in the home place on the land in controversy, he wrote to her saying that he was an old man and didn't expect to live long, as his health was failing him, and that he had arranged his business so that if her father wanted to live in the country they could live there.''

In addition to the facts found by the Court of Civil Appeals, it was shown by the witness Simpson that at the time the sealed envelope was delivered to him by Patillo, he did not remember that there was any endorsement on the envelope, from which it may be inferred his attention was not called to such endorsement by Patillo; and by the witness Pat Henry that T. J. Patillo married the mother of Madam Mary Henry and Josephine Ridings when they were of the tender ages of ten and three years respectively, and that Patillo had no children of his own. That he had never been married before and never married after the death of his wife, which took place in 1891, and that he seemed to love the grantees as if they were his own children.

That he lived at the home of Mrs. Mary Henry for about four years, having there a room furnished by himself, and which he called his home. That Mrs. Patillo, the mother of grantees, died intestate and left community property of herself and husband consisting of real estate, which was disposed of by Patillo after his wife's death.

In the opinion rendered by the Court of Civil Appeals, upon the record as above disclosed, it is held that there was no sufficient evidence to make an issue to be submitted to the jury as to whether or not there was such a delivery of the deed, executed by Patillo to the defendants, as to pass to them the title to the land in controversy. The language of that court is: "We are of the opinion that when the testimony recited, which is all there is in the record material to the question, is considered with reference to the rules of law controlling such cases, it must be said that it did not make such an issue, and that the trial court should have instructed the jury to find against the contention made that the delivery of the deed by Patillo to Simpson had the effect to pass the title to the land to the grantees named in it."

We are unable under any view of the law, as we understand it, applied to the facts of this case to agree with the conclusion of law reached by the Honorable Court of Civil Appeals, but to the contrary do we think that under the facts, as found by that court and herein set out, no issue is made against the contention of defendants below that Patillo made and executed a valid deed conveying to Madam Mary Henry and Josephine Ridings the land in controversy, and that he left said deed in escrow with the bank for safe keeping and for delivery to said grantees after his death. Stress seems to be laid upon the idea that Patillo did not, by any act or declaration of his, lose control of the deed after he had duly executed it and placed it in the bank for safe keeping and delivery to the grantees after his death. We do not think, from the findings of fact, that there is any evidence, or any circumstance proven by any competent testimony in the findings of the appellate court, or in the record, that proves or tends to prove that Patillo did not part with all control over the deed when he handed it to the cashier of the bank with the declaration that he desired the deed, which he said conveyed some land to the grantees, deposited in the vault of the bank for safe keeping and delivery to them after his death. But why cavil over the issue whether the grantor did or not deposit the deed with the bank for safe keeping and subject to his control, if he executed the deed conveying the land therein described to the grantees named and declared his desire that it should be delivered to them after his death? His act in executing the deed, accompanied with his positive declaration of his purpose in so executing it and his desire that it should be delivered to the grantees after his death, had the effect in law to convey the title in the land to the grantees in the deed with possession and the usufruct in the grantor. It had precisely the same effect as if he had made and delivered the deed to the grantees, conveying them the fee, reserving to himself in the deed the use and enjoyment of the land for and during his natural life.

The question of delivery of a deed is one of intention on the part

of the grantor, and an actual or manual delivery by the grantor in person to the grantees is not essential to pass the title. Brown v. Brown, 61 Texas, 60; Devlin on Deeds, sec. 275. If it be shown that the deed was duly executed by the grantor and that it was his purpose and intention to deliver, or have delivered, such deed to the grantees, the law will aid such intention and give it like effect as if the deed had been actually delivered. What constitutes a delivery of a deed is a question of law, but whether there was in fact a delivery of the deed under consideration is a question of fact to be determined by the jury. Towery v. Henderson, 60 Texas, 295.

Suppose Patillo, after having executed the deed, declared his purpose was to convey the land to the grantees and that he desired the deed delivered after his death, had retained possession or control of it during the remainder of his life, without otherwise having disposed of the land. Under the rule well recognized, applicable to such cases, the title to the land would have vested in the grantees named in the deed. Especially would this seem to be true when applied to the facts of this particular case. It was unquestionably the intention of Patillo to deliver the deed to the grantees. Hubbard v. Cox, 76 Texas, 242; Dill. on Deeds, sec. 262; Delvin on Deeds, secs. 262, 281, 283; 18 Cyc., 562 (d); Belden v. Carter, 4 Day, 66 (4 Am. Dec., 185).

We are aware that it is a general rule of law recognized by the text books, and said to be in accord with legal reasoning, that a deed should not be effective where the grantor reserves the right to recall the same prior to his death, but even the rule thus stated with the qualification that it be attended with a reservation of the right to recall the deed is not of universal adoption. It is generally conceded that each case must rest upon its own peculiar facts and circumstances. Where the grantor executes the deed and his intention to deliver the same is clear, the title passes to the grantee, irrespective of the fact that the grantor retains control of the deed during his lifetime. In the case of Belden v. Carter, *supra,* the court, in passing upon the immediate question here under review, said: "The grantor delivered the deed to Wright, with a reservation of a power to countermand it; but this makes no difference; for it was in the nature of a testamentary disposition of real estate, and was revocable by the grantor during his life, without an express reservation of that power. The case, then, stands upon the same footing as if there had been no reservation of a power to countermand the deed. It was a delivery of a writing as a deed to the use of the grantee, to take effect at the death of the grantor, deposited in the hands of a third person to hold till that event happened, and then to deliver it to the grantee. The legal operation of this delivery is, that it became the deed of the grantor presently; that Wright held it as a trustee for the use of the grantee; that the title became consummate in the grantee by the death of the grantor; and that the deed took effect, by relation, from the time of the first delivery."

It is stated in a note to the foregoing decision that the doctrine there announced has been approved in the following cases, all of which we have not examined, but quote for the benefit of those who may further desire to investigate the subject; the rule seems to be

founded in sound reason.   Stewart v. Stewart, 5 Conn., 320; Jones
v. Jones, 6 Conn., 113; Alsop v. Swathel, 7 Conn., 503; Merrills v.
Swift, 18 Conn., 262; Church v. Gilman, 15 Wend., 661; Tooley v.
Dibbel, 2 Hill, 643; Hathaway v. Payne, 34 N. Y., 106; Stanton v.
Miller, 65 Barb., 73; Stephens v. Rinehart, 72 Pa. St., 440; Wallace
v. Harris, 32 Mich., 398; Bell v. Farmers Bank, 11 Bush. (74 Ky.),
41; Bryan v. Wash., 7 Ill., 565; Guard v. Bradley, 7 Ind., 605; Carter
v. Mills, 30 Mo., 439; Cooper v. Jackson, 4 Wis., 538.

We think it immaterial as it relates to the purpose and effect of
the execution of the deed by Patillo, whether he did or not part with
its custody, or whether, after depositing the deed in the bank for
safe keeping, he retained control over it.   In what manner this fact
or circumstance might control the question as to what Patillo's pur-
pose and intent were in executing and delivering the deed, we are
not able to see.   We have his positive declaration that the deed was
for land granted by him to the grantees named in the instrument,
and that he desired and intended that the deed should be delivered
to them after his death.   This declaration evidenced his purpose and
intent in executing the deed to convey the land to the grantees and
to have the deed delivered to them after his death.   Or, what was in
legal effect the same, he had conveyed to the grantees the property,
but desired to retain possession and enjoy the fruits of the land
while he lived, knowing that a deed takes effect only from the date
of its delivery.   Tuttle v. Turner, 28 Texas, 773; Delvin on Deeds,
2 ed., sec. 264.

If the deed had been taken by Patillo during his lifetime from the
bank and found among his effects after his death and the land not
otherwise disposed of by him, in view of his declaration to Simpson,
the grantees would unquestionably take the title to the land under the
deed.   The avowed purpose of the grantor in executing the deed that
it was to convey the land to the grantees named therein, to be deliv-
ered to them after his death, and the finding of the deed in his pos-
session, as above assumed, not destroyed but held intact, and the
property not otherwise disposed of would not only be evidence and
circumstance sufficient to establish the effectiveness of the deed in
question and the grantees' rights thereunder, but it would do so
undubitably.   Here we find the deed was duly executed, deposited in
a bank for safe keeping and delivery upon the death of the grantor.
Whatever view might be taken of the grantor's right to control the
deed, we have the declaration of his purpose, and the fact that the
grantor lived for many months within a short distance of the bank
and never called for the deed or disposed of the land.   What more
may it be thought was necessary to be shown to establish grantees'
title?

On the other hand, let us see what facts there are in the record to
rebut those of the grantor's purpose to convey the property and place
the deed in escrow to be delivered, upon the contingency of his death,
to the defendants.   The deed was in the handwriting of and acknowl-
edged before a notary who had his office in the court house in Bon-
ham, in Fannin County, and who was shown to have died before the
trial of the case.   The deed was placed in a large envelope, upon

which was endorsed in the grantor's handwriting: "T. J. Patillo or Mary Henry and Miss Joe Kearnes." The record is silent as to when this endorsement was placed upon the envelope, or for what purpose. The deed was subsequent to its execution deposited in the bank in Bells, in Grayson County, where it remained until after the death of Patillo, when it was delivered by the officers of the bank to one of the grantees, and placed on record.

There is in the record no other fact or circumstance relative to this subject established by any competent testimony. The testimony of the witness to the effect that after the date of the deed's execution by Patillo he listed the property for sale, and inquired often as to whether it could be sold, and of another that Patillo refused to sell him a portion of the land, but offered to sell the entire tract, was not competent testimony to prove any issue in the case. The only relevant purpose for which this testimony could have been offered was for the purpose of showing that Patillo did not execute the deed in question for the purpose of conveying the land therein described. For this purpose it was not admissible, being hearsay evidence and in disparagement of the grantor's deed duly executed. Hays v. Hays, 66 Texas, 609 (15 S. W., 895); Snow v. Starr, 75 Texas, 416 (12 S. W., 673); Gilbert v. Odum, 69 Texas, 670 (7 S. W., 510); Delvin on Deeds, sec. 281a.

While the admission of this testimony was not objected to by counsel for defendants, that fact would be important only in the event its admission was afterwards complained of as violative of a right reserved to defendants. Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case.

We recognize the rule invoked by defendant in error to the effect that parol testimony is not admissible to show the construction placed upon a written contract by the parties themselves, where there is no ambiguity in the language of the instrument, and when the intent of the parties may be ascertained from the contract as written. Soell v. Hadden, 85 Texas, 187. But we do not think that rule can in any sense be made applicable to the facts of this case. The memorandum endorsed on the back of the envelope as heretofore set out is meaningless, unless its meaning may be supplied by conjecture. If the court was authorized to say its meaning was that Patillo desired the envelope with its contents delivered to him or to the grantees named in the deed, the contention of defendant in error to the effect that Patillo's declaration to Simpson was incompetent because it varied a written contract would not be maintainable, for the reason there is nothing in the record showing at what time or under what circumstances the endorsement was made on the envelope. The material question is what was the intent or purpose of Patillo at the very time

he delivered the deed to Simpson. Whatever purpose he may have had before that time inconsistent with the purpose he had at the time he deposited the deed with Simpson, is immaterial to the vital question. If the endorsement may be given the dignity of a written contract, or a written memorandum of .instruction, it· certainly can have no greater dignity than such. It is competent to show by parol that a written contract entered into with all the solemnity of the law, has been abandoned by the parties. Whatever intention Patillo might have had before he handed the sealed envelope with its contents to Simpson with reference to the disposition of the deed inconsistent with the instruction then given him must be treated as abandoned. The testimony was competent, and is conclusive of the issue as to the grantor's intent to deliver the deed to the grantees therein. Steffian v. Bank, 69 Texas, 517; Hubbard v. Cox, 76 Texas, 244.

The questions considered by this court have been those of · law growing out of the facts as found by the Honorable Court of Civil Appeals, and as we construe the legal effect of such facts the deed in question was executed and delivered by the grantor to the bank in escrow to be delivered to the grantees therein after the death of the grantor, and such delivery having been made upon the happening of the contingency, related back so as to divest the title of the grantor by relation from the first delivery. Bury v. Young, 98 Cal., 446, 35 Am. St., 188.

In view of the law applicable to the facts of this case, as we understand it, and as we have herein declared it to be, there remains to us no alternative but to reverse the judgment of the Court of Civil Appeals and affirm that of the trial court. The issues were all fairly and properly presented to the jury by the trial judge and we see no reason why that judgment should be disturbed.

The judgment of the Court of Civil Appeals will therefore be reversed and that of the trial court affirmed, and it is accordingly so ordered.

*Reversed and judgment of District Court affirmed.*