**EARL et al. v. MUNDY.  (No. 1155.)**

(Court of Civil Appeals of Texas. El Paso. Feb. 3, 1921. Rehearing Denied Feb. 24, 1921.)

1. **Deeds** 61—**Execution of deed to wife and delivery by husband to third person vested title in wife.**

Execution of deed by a husband to his wife and its delivery by the husband to a third person, with instructions to place the deed in the wife's private safety box and to have it recorded in case anything happened to him, had the legal effect to then vest title to the property conveyed in the wife.

2. **Trial** 194(11)—**Instruction in action to cancel deed not erroneous as on weight of evidence.**

In an action by a husband's residuary legatees to cancel deed to his wife, instruction that, if a husband executes to his wife a conveyance, though he retains the manual possession thereof, unless a contrary intention is shown, his possession is the possession of the wife, and delivery is presumed, *held* not erroneous as on the weight of the evidence.

3. **Deeds** 56(1)—**Actual manual delivery not necessary.**

An actual manual delivery of deed is not necessary to pass title from grantor to grantee if the intention to deliver appears, and such intention may be evidenced by the facts and circumstances shown.

4. **Trial** 194(11)—**Instruction stating burden of proof in suit to cancel deed not erroneous as on weight of evidence.**

In an action by a husband's residuary legatees to cancel deed to his wife, instruction that the burden of proof rested on plaintiffs to show by a preponderance of the evidence that the instrument was not delivered *held* not erroneous as on the weight of the evidence.

5. **Homestead** 113—**Conveyance by husband to wife without her joinder not void.**

A husband's deed to his wife of their homestead property, without her joinder, the conveyance being intended to take effect on the contingency that something happened to the husband, on happening of which the conveyance was to be recorded, was not such a sale and conveyance of the homestead as is inhibited by Const. art. 16, § 50, and by Vernon's Sayles' Tex. Ann. Civ. St. 1914, art. 1115; the deed not being void because the property was a homestead.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Ella D. Earl and others against Harriet Mundy. From judgment for defendant, plaintiffs appeal. Affirmed.

See, also, 227 S. W. 716.

Lea, McGrady, Thomason & Edwards, and L. A. Dale, all of El Paso, for appellants.

F. E. Hunter and Davis & Goggin, all of El Paso, for appellee.

WALTHALL, J. This suit was brought by Ella D. Earl and others, appellants herein, residuary legatees under the will of J. J. Mundy, deceased, against Harriet Mundy, appellee and surviving widow of J. J. Mundy, deceased, to cancel a deed executed and acknowledged by J. J. Mundy on July 6, 1909, conveying to his wife, Harriet Mundy, the real estate described therein, said real estate then and thereafter being the homestead of J. J. Mundy and Harriet Mundy, until the death of J. J. Mundy, which occurred on October 15, 1919, and which property still is the homestead of Mrs. Mundy. The ground upon which the cancellation of the conveyance as a deed is sought is that the deed was never delivered by J. J. Mundy to Harriet Mundy, nor to any one for her. Appellants alleged that the deed was intended as a mortgage to secure Mrs. Mundy in the payment of money loaned by her to Mr. Mundy; that the property was the homestead of Mundy and his wife, and was not subject to be mortgaged for the indebtedness; the instrument purporting to be a deed was not signed by Mrs. Mundy nor acknowledged by her, and was ineffective and inoperative as a conveyance or as a mortgage on the homestead; that while the deed was executed on July 6, 1909, it was not recorded until after the death of Mundy, on October 15, 1919, its record occurring on October 20, 1919.

Appellee answered by general denial, plea of not guilty, and by cross-action, by a plea for affirmative relief alleging ownership of the property, and asked for recovery of title, possession, and to remove cloud from title.

The case was tried by a jury and submitted on special issues. On the two issues submitted, the jury found, first, that the deed in question was delivered by J. J. Mundy to

Harriet Mundy. On the second issue the jury found that it was not the mutual agreement of J. J. Mundy and Harriet Mundy at the time of the execution of the instrument, that same was for the purpose of securing the repayment of money owed by Mr. Mundy to Mrs. Mundy.

On the above findings judgment was rendered that appellants take nothing by their suit, and appellee recover on her cross-action the title and possession of the property in controversy.

Appellants present eight assignments of error. The first and second assignments are directed to the exclusion of the evidence of witnesses J. D. Mayfield and Clarence W. Harper. Had the witness Mayfield been permitted to testify, he would have stated that, in or about the year 1914, J. J. Mundy employed him to write his will; that witness wrote the will; that the will was executed by Mundy in the presence of witness and one other as subscribing witnesses; that in said will it was provided that defendant, Mrs. Harriet Mundy, should have the use and occupancy of the homestead, the property here in controversy, during her life, and at her death said property should go to and become a part of the residuary estate of J. J. Mundy. Had the witness Harper been permitted to testify, he would have stated that the property in controversy had been rendered for taxes, for all years since and including the year 1909, in the name of J. J. Mundy, part of the years the renditions were made by Mr. Mundy himself, and part of the years renditions were made by F. H. Nolte, and for none of said years was the property rendered in the name of Harriet Mundy. It is insisted under these assignments that the evidence of each of the two witnesses tended to show the exercise of dominion by J. J. Mundy over the property in controversy, and the assertion of rights therein in him, circumstances tending to disprove the delivery of the deed, which deed on its face purports to convey the property, that the question of the delivery of the deed was an issue in the case, and that on that issue appellants were entitled to have the evidence go to the jury. Appellee suggests that the evidence of each of the two witnesses were acts in disparagement of title, and not made in the presence of Mr. Mundy, and was hearsay.

We will here state some of the uncontroverted facts disclosed by the evidence. On July 6, 1909, J. J. Mundy was the owner of the property in controversy. The property at that time, and at all times thereafter until the day of his death on the 15th day of October, 1919, was the homestead of J. J. Mundy and his wife, appellee herein. On July 6, 1909, J. J. Mundy, by general warranty deed, in usual form of such instruments, conveyed the land in question to Mrs. J. J. Mundy (Harriet Mundy), expressing a paid consideration of $18,000. The deed was duly acknowl-

edged on the date of its execution. F. H. Nolte was bookkeeper for the El Paso Commercial Company, and J. J. Mundy was its president. The deed above referred to was written on the typewriter by Nolte. He wrote it at Mr. Mundy's suggestion and under his instructions. After the deed was prepared and before it was signed, Nolte handed the deed to Mr. Mundy. After the deed was acknowledged Mr. Mundy handed it back to Nolte, and gave him instructions in regard to the disposition of it. Nolte testified:

"He told me to have that deed recorded in case anything happened to him. He also told me to put it in her box, in her private box. I am talking about the black tin box belonging to Mrs. Mundy, which was kept in the office of the El Paso Commercial Company. It was not locked up. Mrs. Mundy, Mr. Mundy, and myself had access to that box, nobody else. I put the deed in that box, and it remained in that box from July 6 or 7, 1909, until I took the deed out to have it recorded, except Mrs. Mundy had it in her hands, looking over the papers. Then, of course, it could not have been in the box. Every time I would go in that box the deed was there with the rest of the papers, and other papers. * * * Mrs. Mundy went into that box probably once a month, or once in two months, not regularly. There were some notes in there that she had bought from the El Paso Commercial Company, and otherwise. The notes belonged to Mrs. Mundy at that time. None of Mr. Mundy's papers were kept in that box."

After Mr. Mundy's death witness Nolte had the deed in question placed of record. On the facts stated, as we view them, there is no conflicting evidence.

As stated above, the jury found that the deed in question was delivered by Mr. Mundy to Harriet Mundy, and that its execution and delivery was not for the purpose of securing money loaned.

[1] We have concluded that the execution of the deed and its delivery by Mr. Mundy to Nolte with Mr. Mundy's instructions to Nolte to place the deed in Mrs. Mundy's private box, and to have it recorded in case anything happened to him, had the legal effect to then vest the title to the property described in the deed in Mrs. Harriet Mundy. Henry et al. v. Phillips, 105 Tex. 459, 151 S. W. 533. We need not review that case at length, but state briefly the facts upon which the Supreme Court based its holding.

In that case the grantor handed an envelope to the cashier of the bank with the instructions:

"Simpson, here is a deed of some land to Miss Joe Kearnes and Mrs. Pat Henry, that I want to lay away in the vault for safe-keeping, and the deed to be delivered after my death."

The deed was signed and acknowledged, and recited a paid consideration of $25, and the further consideration of love and affec-

tion, the two mentioned grantees being stepdaughters of the grantor. After the deposit of the deed with the cashier of the bank as above, the grantor made frequent efforts to sell the property, and otherwise to exercise control over the property. The suit was to cancel the deed on the ground that it was not delivered, the contention being that the deed was placed in the bank for safe-keeping. The Supreme Court said:

"But why cavil over the issue whether the grantor did or did not deposit the deed with the bank for safe-keeping and subject to his control, if he executed the deed conveying the land therein described to the grantors named, and declared his desire that it should be delivered to the grantees after his death? His act in executing the deed, accompanied with his positive declaration of his purpose in so executing it and his desire that it should be delivered to the grantees after his death, had the effect in law to convey the title in the land to the grantees in the deed, with possession and usufruct in the grantor. It had precisely the same effect as if he had made and delivered the deeds to the grantees, conveying them the fee, reserving to himself in the deed the use and enjoyment of the land for and during his natural life."

Here there is no suggestion in the evidence that Mr. Mundy had the deed placed in Mrs. Mundy's tin box for safe-keeping, or that he intended by doing so to exercise any control whatever over the deed. The undisputed evidence shows that he had access to the box; that the deed remained in the box for about 10 years, and until the happening of the contingency upon which, as stated by him, the deed should be recorded. The box in which the deed was placed by Nolte was kept in the building and in the office safe of the El Paso Commercial Company, of which company Mundy was president. The property conveyed was at all times after the execution of the deed used and occupied by Mundy and his wife as their homestead until Mundy's death. In Henry v. Phillips, supra, the case was not so clear in its facts as to the intention of the grantor as this. The Supreme Court held, in effect, that the legal operation of the delivery of the deed was that it became the deed of the grantor presently; that Simpson held it as trustee for the use of the grantees; that the title became consummate in the grantees by the death of the grantor; and that the deed took effect by relation from the time of the first delivery.

We have discussed the question of the legal effect of the delivery of the deed, and the time when the title conveyed passed from the grantor, Mundy, as a question preliminary and determining the one presented in the first two assignments. If it could be said that under the will prepared by the witness Mayfield and executed by Mundy in 1914, Harriet Mundy should have the use and occupancy of the property as a homestead for and during her life, and at her death the property should become a part of the residuary estate of Mr. Mundy, and that during the years intervening between 1909 and 1919 Mr. Mundy rendered the property for taxation in his own name, as would have been stated by the witness Harper, such evidence was incompetent, and could have no probative force in determining the issue of intention of Mundy in placing the deed in the hands of Nolte with instruction to put the deed in Mrs. Mundy's tin box, and record same in the event anything should happen to him, for the reason, as held by the Supreme Court in the Henry v. Phillips Case, supra, that the delivery of the deed by reason of the facts stated was then complete, and the title to the property in Mrs. Mundy, with the right of use and occupancy of the property in Mundy, or the two, for the purpose of a homestead. In the Henry v. Phillips Case it was proved that Patillo, after the execution and delivery of the deed to the cashier of the bank, listed the property for sale, and inquired often whether it could be sold, and offered to sell the property. But it was held that such evidence was incompetent to prove any issue in the case, on the ground that such evidence was hearsay, and was in disparagement of the grantor's deed. The above holding is fully sustained by the further additional authorities. Thompson v. Herring, 27 Tex. 282; Smith v. Elyea, 68 Tex. 70, 3 S. W. 258; Smith v. James, 42 S. W. 792; Wallace v. Berry, 83 Tex. 328, 18 S. W. 595; McKnight v. Reed, 30 Tex. Civ. App. 204, 71 S. W. 318; Mooring & Lyon v. McBride, 62 Tex. 309; Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 5 A. L. R. 1660.

The two assignments are overruled.

[2, 3] Appellants' third assignment is directed to the giving of the following special charge submitted by appellee:

"You are instructed that if a husband executes to his wife a conveyance, although he retains the manual possession thereof, unless a contrary intention is shown, his possession is the possession of the wife, and a delivery thereof is presumed."

The objection made to the charge is that it is upon the weight of the evidence.

Judge Stayton, in Stooksberry v. Swann, 85 Tex. 563, 22 S. W. 963, said:

"A charge which in effect informed the jury that the law presumes the existence of some fact from the existence of others is a charge upon the weight of evidence, and therefore improper, unless it be in those cases in which the presumption is said to be one of law, and therefore conclusive, or one of fact required by positive law, but rebuttable."

The charge, in effect, told the jury that the manual possession of the deed by Mundy was the manual possession of Mrs. Mundy, and that, by reason of such possession, the delivery of the deed being one of intention,

the delivery of the deed to Mrs. Mundy is presumed, unless a contrary intention on the part of Mundy is shown, that is, such possession by Mundy is prima facie a delivery of the deed to Mrs. Mundy, unless it be shown that the retention by Mundy of the deed was other than for his wife. The actual or manual delivery of the deed by Mundy in person to Mrs. Mundy was not essential to pass the title. Brown v. Brown, 61 Tex. 56; Henry v. Phillips, supra. In Hubbard v. Cox, 76 Tex. 239, 13 S. W. 170, it was said that an actual manual delivery of the deed is not necessary to pass the title from the grantor to the grantee, so that the intention to deliver appears, and such intention may be evidenced by the facts and circumstances shown. In McCartney v. McCartney, 93 Tex. 359, 55 S. W. 310, it was held that, the parties being husband and wife, and their relation giving to the husband custody of his wife's title papers and the management of her property, a deed executed by him to her, and intended to invest her with title, need not be actually put in her possession, but its retention by him for her would be a sufficient delivery.

It seems to us that the question of intent on the part of Mundy, as to the deed, being the only issue to be determined on the question of the delivery of the deed, and that issue being rebuttable, the charge would not conclude the issue of intention, and would not be on the weight of the evidence.

But why raise the question? Mundy, under the undisputed evidence found in the record, executed the deed conveying the property to his wife, and delivered the manual possession of the deed to Nolte, with the instructions stated above as to its disposition. So far as the record shows, Mundy was not in the manual possession of the deed from the day of its execution or the day following. It seems to us that the special charge was hypothetic, and would be unimportant, unless it had the effect to exclude from the consideration of the jury all evidence as to the intention of Mundy in executing the deed, and the disposition he made of it. The charge, we think, did not have such effect.

[4] The fourth assignment complains of the giving of appellee's special charge, instructing the jury:

"That the burden of proof rests upon the plaintiffs to show by a preponderance of the evidence that the instrument purporting on its face to be a conveyance from J. J. Mundy to his wife, Mrs. J. J. Mundy, was not delivered."

The objection is that the charge is upon the weight of the evidence. Appellants pleaded that the deed was executed and acknowledged by Mr. Mundy, and read the deed in evidence, but further alleged that Mundy always retained the deed in his possession, and never delivered it to Mrs. Mundy, nor to any one for her, nor did he ever part with control over said instrument, and never intended that the deed should be operative as a deed of conveyance.

The burden evidently was on plaintiffs to show such facts or circumstances as would warrant a finding that the deed, though executed, never in fact became operative as a conveyance of the title because never delivered. While, under the evidence offered, it might not have been necessary to tell the jury upon whom the burden rested, we think the charge, neither in the form in which it is given, nor the giving of it, is objectionable as being upon the weight of the evidence. Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593; Texas Midland R. Co. v. Ray, 168 S. W. 1013 (on motion for rehearing).

The court was not in error in rendering the judgment for appellee, as complained of in the fifth assignment. The jury found that the deed was not intended as a mortgage. The finding has support in the evidence.

For the same reason as above the court was not in error in rendering judgment for appellee as claimed in the sixth and seventh assignments. The jury found that there was a delivery of the deed by Mundy to Mrs. Mundy. We have stated our views on the issue of the delivery of the deed in discussing the third assignment.

[5] It is insisted under the eighth assignment that the proof shows the land conveyed was the homestead of Mundy and his wife at the date of the deed in question, and so remained until the death of Mundy, and that, the wife not having joined in the deed, the title was not conveyed.

The property mentioned in the deed was the homestead of Mundy and his wife at the time of the execution of the deed, and so remained until the death of Mundy. Was it necessary to a conveyance of Mundy's fee in the homestead property that Mrs. Mundy join him in the conveyance to her, the conveyance to take effect on the contingency that something happen to him, on the happening of which the conveyance to be recorded? We have found no case in this state directly deciding the question presented. If the conveyance had been to a third party, a different question would be presented. The conveyance in no wise affected the property in its use as a homestead of either Mundy or his wife, nor did it in any wise affect the title of the property so as to prevent either Mundy or his wife, at present or in the future, from maintaining in themselves or in either a homestead interest in the property. No change in possession or use of the property, by reason of the conveyance, could be maintained by either Mundy or his wife, as against the other. It seems to us that the conveyance in this case was not a sale and conveyance of the homestead as is inhibited by article 16, § 50, of the Constitution of this state, and by article 1115, Vernon's Sayles' Texas Civil Statutes. The deed was not void by reason of the fact that the property was

the homestead. In Irion v. Mills, 41 Tex. 310, the husband conveyed the homestead without the concurrence of the wife, and they remained upon the land conveyed until they both died. After the death of the husband and wife the administrator sued to recover the property on the ground that the deed conveyed no title to the homestead. The court held that the administrator could not recover, because the husband, if living, could not have done so. Marler v. Handy, 88 Tex. 421, 31 S. W. 636; Randleman v. Cargile, 163 S. W. 850; Gould v. West, 32 Tex. 352; Stallings v. Hullum, 89 Tex. 431, 35 S. W. 2.

Finding no reversible error, the case is affirmed.