WILLIAMS *v.* FITCH, Administrator, &c.

Where the trustee of a fund to which he would succeed in case of intestacy prevents the making of a will in favor of a third party by promising to hold the fund for the benefit of the intended legatee, the latter may recover its value as money had and received to his use.

Whether such an arrangement, made in contemplation of death by the party intending the legacy, is equivalent to a delivery of the securities in the hands of the trustee, so as to take effect as a *donatio causa mortis, Quære.*

A communication to an attorney, in reference to his client's personal estate, made upon retaining him to draw an affidavit for the purpose of procuring a reduction of the assessment of such estate is privileged.

Where evidence, bearing with directness and force upon the question at issue, has been erroneously admitted by a referee, a new trial must be granted, although there may be unobjectionable evidence sufficient to sustain his conclusion.

APPEAL from the Supreme Court. The action was against the defendant as administrator of one Bennett. The complaint was, that Bennett, at the time of his decease, was justly indebted to the plaintiff in the sum of $10,000, for so much money had and received of Fanny Bennett, an aunt of the plaintiff, as trustee for the plaintiff, to use the same for the plaintiff, and to account and pay to him therefor, with interest, and being so indebted, he, the said Bennett, promised, &c. The answer was, that Fanny Bennett was the daughter of the defendant's testator; that she never married, died intestate and without issue, and that her father, as next of kin, became entitled to all her property. The trial was before a referee, who found as facts that, in 1817, Frances Bennett placed in the hands of her father $2,000, to be invested by him for her benefit; that at the time of her decease, in 1841, he was indebted to her over $4,000 for the money thus intrusted to him, with its accumulations, standing invested in his own name, in bonds, mortgages and other securities then in his hands.

That shortly before the death of Frances, he agreed with her to hold such money and property as the trustee or agent or other fiduciary of and for her nephew, the plaintiff in this action, who was then an infant, seven years old, in consideration that she would and did, at his instance and request, refrain from making a will giving the whole of such property, immediately upon her decease, to her said nephew, which she was then desirous of doing and setting about to do. The referee's report was in favor of the plaintiff, and the judgment thereupon entered having, on appeal, been affirmed at general term in the seventh district, the defendant appealed to this court.

*David Wright*, for the appellant.

*George Rathbun*, for the respondent.

By the Court. COMSTOCK, J. From the finding of the referee it appears that Frances, a daughter of Bennett, the defendant's intestate, was entitled, at the time of her decease, to a considerable fund which had been for many years in the hands of her father. We have been asked on the argument to examine the evidence in the case in order to see whether it fully justifies this conclusion of the referee. It is not our province to consider the weight or sufficiency of the testimony. The conclusion being purely one of fact, we are bound to take it as it stands in the record. In regard to the admissibility of the evidence, on which the conclusion is based, we have considered the objections made at the trial, and we incline to think that, with one exception to be hereafter noticed, none of them were well taken.

It also appears, in the conclusions of the referee, that shortly before the death of Frances, she was desirous of making, and was about to make, a will, bequeathing the fund in question to her nephew, the plaintiff in this suit; that the defendant's testator requested her not to make such

will, and in consideration that she would and did refrain from making it, promised and agreed that he would hold the fund as trustee or agent of the plaintiff. It is moreover stated that, after the death of Frances, the defendant's intestate did, in fact, until his own death, hold the fund as the money and property of the plaintiff, and loaned out portions of it in the plaintiff's name. Frances made no will, and the question of law upon these facts is, whether the plaintiff became, in equity, the owner of this fund, and is now entitled to recover it out of the estate of Bennett in the hands of the administrator.

Unwritten or nuncupative wills are valid only when made by soldiers engaged in military service, or mariners at sea. (2 *R. S.*, 60, § 22.) Gifts, however, in contemplation of death, may take effect when perfected by an actual delivery during the life of the donor. (*Harris* v. *Clark*, 3 *Comst.*, 93.) In this case, if Mr. Bennett had delivered the money and securities which he held for his daughter into her own hands, and she had redelivered them to him to hold in trust for the plaintiff after her decease, and he had accepted them upon that trust, I think the transaction would have been a valid gift, *mortis causa.* An actual delivery, of the thing intended to be given, to a person in trust for the donee, and the acceptance of the trust, would be sufficient to perfect a gift, whether *inter vivos* or in contemplation of death. The transaction in question was not attended with the formalities here suggested. Bennett had the fund already in his hands and there was no ceremony of delivery and redelivery. In place of that, his agreement was substituted, by which he placed himself in a trust relation to the plaintiff, and undertook to hold the property for his benefit after the decease of the donor. The formal acts of transfer and retransfer, it seems to me, were not essential, because those acts would have left the fund just where it was actually left, in the hands of Bennett, and impressed with the same agreement or trust. I incline therefore, with

some hesitation, to the opinion that the intended bounty of Frances Bennett in the plaintiff's favor took effect as a gift *mortis causa.* Some of my brethren concur in that opinion, but we do not now determine the question.

In another view of the transaction we have less doubt. Frances Bennett left no child or descendant. On her decease, therefore, according to the law of distribution, her father would be entitled to the whole of her estate ; and the plaintiff's claim is now resisted on the ground, amongst others, that he did thus become entitled to the very fund in controversy. Now, when we consider that the making of a will giving this very estate to the plaintiff, was prevented by his own agreement to hold it in trust for the plaintiff's benefit, it needs no argument to show that his claim to keep it, as in case of intestacy, rests upon no foundation of justice. It would seem, too, that authority, not less than principle, stands opposed to any such pretension. In *Chamberlain* v. *Chamberlain* (*Freem. Ch. R.*, 34), a testator having settled lands on his son for life, and proposing to make an alteration of his will, for fear there would not be enough of other estate to pay certain legacies to his daughters, was told by the son that he would pay them if the assets were deficient. It was held that the son, having made to the testator a promise which prevented him from altering his will, should pay the legacies. In *Devenish* v. *Baines* (*Prec. in Ch.* 3), a copyholder intending to devise the greater part of his copyhold estate to his godson, was prevailed upon by his wife to nominate her to the whole on her promising to give the godson the part intended for him, and it was decreed against the wife accordingly. In *Oldham* v. *Litchfield* (2 *Vern.*, 506), lands were charged with an annuity on proof that the devisee promised to pay it, and by such promise prevented the testator from charging them in his will. In *Barrow* v. *Greenough* (3 *Ves.*, 152), a provision made by will in favor of a wife, was increased upon proof that the executor and residuary legatee promised the testator to pay the increased amount

in consequence of which he refused to alter his will. (*Reech v. Kennegal,* 1 *Ves., Sen.,* 123 ; *Hoge* v. *Hoge,* 1 *Watts,* 163 ; 1 *Story's Eq.,* § 256 ; *Podmore* v. *Gunning,* 7 *Simons,* 644.) The principle on which these authorities proceed has, I think, never been seriously called in question, and it has a direct application to the present case. We are, therefore, of opinion, upon the facts found at the trial, that the defendant's intestate held the funds in question upon a trust for the benefit of the plaintiff, and consequently that the plaintiff is entitled to recover them from the defendant as administrator.

On the trial the defendant moved that the suit be dismissed, on the ground that the evidence did not sustain the cause of action stated in the complaint, or support the items of the demand claimed and described in the bill of particu-. lars. We think this objection was not well taken. In both the complaint and bill of particulars, Mr. Bennett is charged with funds received by him from his daughter Frances under a trust for the plaintiff. The circumstances disclosed in the evidence leading to the trust and constituting it, are not fully stated in the plaintiff's allegation, and perhaps, so far as stated, some variance in the details may be discovered ; but it cannot be said that one cause of action is alleged, and another, different, in substance and nature, proved. (*Code of Procedure,* § 173.)

We should, on the whole, affirm' the judgment but for one exception at the trial, which appears to us to have been well taken. Mr. Cox, an attorney and counsellor at law, being called as a witness, was required to disclose a con versation between himself and Bennett at the time when he was employed to draw an affidavit to be sworn to by Bennett and used for the purpose of reducing the assessment of his personal estate. It appears that in the tax roll, Bennett was assessed in respect to the personal estate now in question and that he proposed to reduce his tax on the ground that he was not the owner. The conversations with Mr. Cox

related to the tax and to the subject matter of the affidavit which he was employed to draw. They were pertinent evidence, and tended in no inconsiderable degree to sustain the plaintiff's case. But we are of opinion that the communication was privileged, and that it should have been excluded on that ground.

If we hold that this evidence was proper, it will be difficult to maintain that any communication to an attorney is privileged unless made in reference to a suit pending or about to be commenced. Indeed, that was the rule once contended for, but it appears to be now settled otherwise, and we think with great propriety. The subject seems to have been carefully examined by Chancellor WALWORTH in the case of *The Bank of Utica* v. *Merserau* (3 *Barb. Ch. R.* 595), and the leading cases were cited. According to that case and the others which were referred to, the true doctrine would seem to be, that communications made to an attorney in the course of any professional employment, relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence and entitled to protection as privileged communications. In that case, the principle was applied to the conversations with an attorney, who was employed to draw a warrant of attorney; the tendency of the communication being to show that the judgment was confessed for the purpose of defrauding creditors. In *Parker* v. *Carter*, in the Court of Appeals of Virginia (4 *Munf.*, 273), the privilege was held to include communications made to an attorney employed to draw a deed. The present case cannot be distinguished in principle.

On behalf of the respondent, it has been urged that if the privileged conversation with Mr. Cox be rejected, the other evidence in the cause was quite sufficient to sustain the conclusions of the referee. This may be so, but the defendant was entitled to the referee's judgment upon the

testimony which was competent.    It is possible that evidence which is merely irrelevant, and which, it can be seen, could have no bearing on the result, may be disregarded on the review of a trial where no jury is called; but the evidence in question, if competent, bore with directness and force upon the questions at issue.

We are of opinion that the error cannot be disregarded, and that on this ground the judgment must be reversed and a new trial granted.

SELDEN, J., dissented, holding the communication to the attorney, in this case, not privileged.

Judgment reversed and new trial ordered.