Mensing Brothers & Co. v. Mamie Cardwell et al.

Decided June 10, 1903.

**1.—Parties—Joinder—Venue—Landlord's Lien—Foreclosure—Conversion.**

In an action against a tenant for rent and foreclosure of a landlord's lien, a junior mortgagee who had converted the property by virtue of a lien given by the tenant was properly joined as a party, and over his plea of privilege to be sued in the county of his residence. Following the ruling on former appeal, Cardwell v. Masterson, 27 Texas Civ. App., 591.

**2.—Parol Evidence—Objection Below Necessary.**

A party can not complain on appeal that a written contract was proved by parol evidence where no objection to such evidence was made below.

**3.—Landlord's Lien—Purchaser of Property Liable—Conversion.**

Where agricultural products grown upon rented premises are purchased during the time the landlord's lien exist, and are converted by the purchaser to his own use, he is liable to the landlord for the value of the property to an amount not exceeding the rent.

**4.—Same—Conversion by Junior Mortgagee—Intent.**

The action of a junior mortgagee in receiving cotton grown upon rented premises within thirty days after its removal from the premises, with intent to apply it to the payment of his own debt, renders him liable to the landlord for a conversion..

**5.—Same—Unlawful Removal by Tenant—Conversion.**

Where cotton grown on rented premises was, in violation of the statute, removed from the premises without the landlord's consent and sent to junior mortgagees of the tenant at Galveston, this was a conversion, and such junior mortgagees also became guilty of conversion, whether they handled the cotton as the property of the tenant or as their own. Rev. Stats., art. 3236.

Appeal from the District Court of Wharton. Tried below before Hon. Wells Thompson.

*Terry, Ballinger, Smith & Cavin,* for appellants.

*G. G. Kelly,* for appellees.

FLY, Associate Justice.—This suit was instituted by Mamie Cardwell, who has since married George W. Neville, who has been joined in the suit, and Estelle Cardwell, against J. R. Masterson, Jr., and Mensing Bros. & Co., to recover of the first named a debt of $1090, and of the latter the value of forty-one bales of cotton converted by them, or so much thereof as was necessary to liquidate the debt aforesaid, and for a foreclosure of a landlord's lien on all cotton and corn raised on the farm of appellees during the year 1897. The cause was tried by the court, without the aid of a jury, and resulted in a judgment by default against Masterson for the amount of the debt, and against appellants for the sum of $1090, with interest thereon at the rate of 6 per cent per annum.

It was proved that James R. Masterson was a tenant of Mamie and Estelle Cardwell on their farm in Wharton County during the year 1897,

and that at the end of the year he owed appellees the sum of $1090 for rent of the premises, and they had a valid landlord's lien on all the crops raised on the land to secure their rents. In February, 1897, James R. Masterson executed a mortgage to appellants on 150 bales of cotton to be grown during the year 1897 on "that certain plantation in Wharton County, known as the Cardwell plantation," the consideration being goods and money advanced and to be advanced by appellants. At the time the mortgage was executed appellants were fully informed of the fact that Masterson was living on a farm belonging to appellees and had agreed to pay them money rent for the farm, and the amount of the rent, and that the cotton mortgaged by him was to be raised on that farm. It was understood and agreed between appellants and Masterson at the time the mortgage was executed that all cotton raised on the Cardwell farm in 1897 should be shipped to them, and that "they should have all moneys obtained from the sale of said cotton after the rents had been paid to Dr. Rutherford for the account of his nieces, the Misses Cardwell." In October and November, 1897, Masterson shipped forty-one bales of cotton, raised by him on the farm belonging to appellees, to appellants, to be credited by them on their debt due by Masterson, and they received and converted the same to their own use and benefit. The cotton was worth $1099, and when it was converted Masterson was liable to appellees for rent of the farm for 1897, in the sum of $1090.

The first assignment of error complains of the action of the court in overruling appellants' plea of misjoinder of parties and actions; and the second presents error in the action of the court in overruling appellants' plea of privilege to be sued in Galveston County where they resided. Both of the questions raised have been definitely settled against the contention of appellants on a former appeal of this case. Cardwell v. Masterson, 27 Texas Civ. App., 591, 66 S. W. Rep., 1121. In that opinion the authorities are cited and discussed, and we do not feel disposed to further discuss the question, or to go back of the opinion.

In the petition it was alleged that Masterson had agreed to pay appellees the sum of $1200 in cash and 1200 bushels of corn, to be taken by appellees at one-half of its market value; that Masterson had paid $410, and the aggregate value of the corn was $300. The prayer was for $1090. It is insisted by appellants that because there was no proof of the value of the corn, the court erred in rendering judgment by default against Masterson for $1090. There can be no force or effect in the contention, because Masterson testified that he was indebted to appellees in the sum of $1090 for balance due on the rent of the Cardwell plantation for the year 1897.

In the petition it was alleged that Masterson had entered into a written contract with appellees for the rent of their farm during 1897, and the written contract was attached as an exhibit to the petition, but was not introduced in evidence. No point was made in regard to it in the trial court, but by an assignment of error in this court appellants attack

the judgment because the contract was not introduced in evidence. Masterson was permitted, without objection, to swear to the existence of a rental contract with appellees; that he had told appellants about it, and that he still owed $1090 on it. If appellants desired the best evidence of the existence of the contract they should have demanded it in the trial court, and undoubtedly they would have received it. They will not be heard to first complain in an appellate court because the contract was proved by secondary evidence. There was no contention in regard to the rental contract between appellees and Masterson, and the trial judge seems to have proceeded on. that theory, and appellants have lost their right to demand the best evidence by permitting without objection secondary evidence. Hunter v. Waite, 11 Texas, 85; Matlock v. Glover, 63 Texas, 231; Brown v. Lessing, 70 Texas, 544; Long v. Garnett, 59 Texas, 229.

The forty-one bales of cotton, the subject of contention between appellants and appellees, was, according to the testimony of Masterson, delivered to appellants for the purpose and with the understanding between them that the cotton was to be applied to his indebtedness, and he further testified that they received it with the intention, as previously understood between them, of applying it to the indebtedness. They can not defeat appellees' lien by a claim that they held the cotton for more than a month as the property of Masterson. The court was justified in finding that they intended to convert and did convert the cotton as soon as they received it in Galveston, a few days after it was shipped from Wharton County, at a time when the landlord's lien of appellees was in full force and effect. "One who purchases agricultural products produced upon rented premises, or other property liable to the landlord's lien for rent, within the time that the lien continues thereon, and converts the same to his own use, may be sued by the landlord for the value of the property, if it does not exceed the rent due, and if it should exceed the rent, then for the amount of the rent." Zapp v. Dick, 87 Texas, 641. Appellants had possession of the cotton at the time when the lien was in force and were claiming rights in it by reason of their mortgage, which amounted to a conversion. Sanford v. Wilson, 2 App. Civ. Cas., sec. 249.

It is clear from the evidence that appellants had intended from the inception of their possession of the cotton to sell it and appropriate the proceeds. It was a possession to the exclusion and in defiance of appellees' rights therein, and it was in law a conversion. Cooley on Torts, p. 524; Baker v. Beers (N. H.), 6 Atl. Rep., 35; Donahue v. Shippee (R. I.), 8 Atl. Rep., 541. It is held in the last cited case that it is not necessary to a conversion that the property should have been applied to the use of the taker, but the least intermeddling with it in a manner subversive of the dominion which the owner has over it, is sufficient evidence of conversion.

In article 3236, Revised Statutes, it is made unlawful for a tenant to remove agricultural products produced on rented premises, without the

consent of the owner. When Masterson sent the cotton to Galveston, without the consent of appellees, it was a conversion of the beneficial interest appellees had in the cotton, and whether handled by appellants as the property of Masterson or as their own, they too became guilty of conversion. Carter v. Kingman, 103 Mass., 517.

The judgment is affirmed.

*Affirmed.*