**TEMPLE et al. v. CITY OF COLEMAN.***
(No. 6449.)

(Court of Civil Appeals of Texas. Austin.
July 5, 1922. Rehearing Denied
Nov. 15, 1922.)

1. **Trial ☞53—Contents of deed sufficiently established, though deed not offered in evidence.**

In an action to recover realty, where plaintiff read a deed in evidence only for purpose of showing a common source of title and the person who prepared the deed testified as to its execution and contents, it was unnecessary for defendant, as condition of recovery on cross-action, to offer the deed in evidence as a part of his claim of title.

2. **Trespass to try title ☞35(1)—Evidence in support of cross-bill admissible.**

In an action of trespass to try title, evidence in support of defendant's cross-bill was properly admitted; defendant not being limited to evidence admissible under his plea.

3. **Deeds ☞177—Deed delivered to third person effective at grantor's death held irrevocable.**

After delivery by grantor to third person with the present intent of vesting title in grantee to take effect on grantor's death, grantor had no power to revoke the deed.

4. **Trusts ☞35(1) — Trust created against party receiving land under agreement to devise to another.**

Where a person secured land under an agreement to leave it to a city at her death, a trust in favor of the city was created.

5. **Deeds ☞17(5)—Deed carrying out promises made to original owner based on consideration.**

Where grantee secured property under an agreement to leave it to a city at her death, a deed carrying out this agreement was based on a valid consideration.

6. **Trusts ☞1—Trust may arise after title passes.**

The rule that a trust must arise at the time title passes does not apply to an express trust created by grantee promising original owner to leave the property to another at grantee's death.

7. **Trusts ☞35(3)—Failure to probate will held not to affect validity of trust.**

Where devisee promised testatrix to leave the property to the city at devisee's death, the fact that the will was not probated, and devisee secured the property by deeds from testatrix's heirs did not affect the validity of the trust.

8. **Equity ☞57—Maxim, that equity regards that as done which ought to be done, applied.**

Where trustee, whose duty it was to probate a will, failed to do so, gratuitous grantees from trustee were not entitled to take advantage of such failure as the maxim, equity regards that as done which ought to be done, applied.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by E. A. Temple, Bishop of the Northern District of Texas for the Protestant Episcopal Church, and others, against the City of Coleman. From a judgment for defendant on the complaint and the cross-complaint, plaintiffs appeal. Affirmed.

Baker & Weatherred and Critz & Woodward, all of Coleman, for appellants.

Snodgrass & Dibrell, of Coleman, for appellee.

KEY, C. J. E. A. Temple, Bishop of the Northern District of Texas for the Protestant Episcopal Church, individually and as such Bishop and as trustee for the Church of the Holy Spirit, a Protestant Episcopal Church located at Coleman, Tex., and said Church of the Holy Spirit, a voluntary unincorporated religious association, and the members of that church, whose names it is not necessary to set out here, brought this suit against the city of Coleman, a municipal corporation, for the purpose of recovering certain real estate described as block No. 13 of the Clow's addition No. 1 to the city of Coleman, in Coleman county, Tex.

The city of Coleman filed a general denial and plea of not guilty, and pleaded specially that Elizabeth Clow was the owner of the land in controversy, and that she and her daughter, Alice Clow, entered into an agreement and contract, both express and implied, whereby Elizabeth Clow agreed to devise in her last will the property in controversy to Alice Clow, in consideration of the agreement and obligation on the part of Alice Clow with Elizabeth Clow to the effect that Alice Clow would, at her death, convey the property, in fee simple, to the city of Coleman for a public park. That by reason of that agreement, Elizabeth Clow, in her last will and testament, devised and bequeathed the property to Alice Clow, and was induced to do so by reason of the agreement and contract referred to; and that Alice Clow accepted the property charged with a trust to the effect that she would hold and enjoy the benefits of the property during her life, and at her death it would become the property of the city of Coleman. That title to the property was accepted by Alice Clow under the terms of the last will of Elizabeth Clow. That said will was never probated, but in order to perfect her title, Alice Clow obtained from all the other heirs of Elizabeth Clow deeds conveying to her all their interest in the property referred to. That thereafter while Alice Clow held the property in trust for the benefit of the said city of Coleman, on the 9th day of January, 1919, she executed and delivered a certain deed of conveyance, conveying the property in controversy to the city of Coleman, in fulfillment of the trust agreement referred

---

to, and delivered it to J. P. McCord, with directions on the part of Alice Clow to deliver the deed to the city of Coleman upon the death of the grantor, Alice Clow; and that McCord accepted the deed upon the conditions referred to, and thereafter upon the death of Alice Clow, delivered the deed to the city of Coleman, and the same was accepted by that municipality and placed of record in the deed records of Coleman county.

The city of Coleman also filed a cross-action, alleging that it was the owner of the property in controversy, and praying for a judgment establishing its title and right thereto, and for rents.

The plaintiffs filed a supplemental petition, and, among other things, alleged that the deed referred to in defendant's answer and cross-bill as made by Alice Clow to the city of Coleman was made without any consideration, and was revocable at any time before the death of Alice Clow; and that long before its delivery to the grantee therein, and on or about the 22d day of January, 1919, Alice Clow revoked the deed under which the defendant claims, and executed a deed conveying the property to the plaintiff E. A. Temple, for the use and benefit of the Episcopal Church. It was also alleged by the plaintiffs that the deed from Alice Clow to the city of Coleman was procured fraudulently, and by the exercise of undue influence.

The pleadings of the parties were very full, and each contained many exceptions to the pleadings of the adverse party, and we have only attempted to indicate briefly the nature of the case as presented by the pleadings.

There was no jury in the case, and, at the request of the parties, the trial judge filed findings of fact and conclusions of law which read as follows:

"Conclusions of Fact.

"(1) That the block of land in controversy is a part of the R. J. Clow one-third league survey No. 735, same being block 13 of Clow's addition No. 1 to the town of Coleman, Coleman county, Tex.

"(2) That R. J. Clow survey No. 735 was patented by the state of Texas, February 7, 1858, to R. J. Clow.

"(3) That R. J. Clow by deed dated October 21, 1885, conveyed all his land, which included block 13, to his wife, Elizabeth A. Clow.

"(4) That the following facts agreed upon in writing by the parties to this suit to be true to wit:

"(a) That block No. 13, Clow's addition No. 1 to the town of Coleman, in Coleman county, Tex., is a part of the Robert J. Clow one-third league survey No. 735, patented by the state of Texas, February 7, 1858, to Robert J. Clow, and that said one-third league survey is situated in Coleman county, Tex.; that the said Robert J. Clow was a married man and that his wife's name was Elizabeth A. Clow; that the said Robert J. Clow died in Coleman county Tex., about the year 1885, but subsequent to October 21, 1885, the date he executed a deed to his wife, Elizabeth A. Clow, recorded in Book M, p. 285, of the deed records of Coleman county, Tex.

"(b) That Elizabeth A. Clow, wife of the said Robert J. Clow, died in Coleman county, Tex., November 21, 1914; that the said Robert J. Clow and Elizabeth A. Clow had the following children only as fruit of their marriage, to wit: Kate Clow, who married A. L. McLane, in 1871; Alice Clow; Mary Clow and Ada Clow; that neither the said Robert J. Clow nor Elizabeth A. Clow ever had any other children.

"(c) That the said Kate Clow McLane died intestate in February, 1883, and left surviving her as her sole surviving descendants the following named children, to wit, A. H. McLane, Paul McLane, Ray McLane, and Kate McLane; that the said children of Kate Clow McLane to wit, Paul McLane and Kate McLane, died prior to the death of their mother, intestate and without issue, neither of them having been married.

"(d) That Ada Clow died about the year 1890 intestate and without issue; that the said Ada Clow was never married.

"(e) That said Mary Clow married A. L. McLane, the husband of her deceased sister, in 1887, and that she, the said Mary Clow McLane, died the 11th day of November 1919, without issue, never having had any children.

"(f) That Alice Clow died in Coleman, Tex., on the 21st day of March, 1919, without ever having married and without having any descendants surviving her.

"(g) That Mary Clow, who married A. L. McLane in 1887, was commonly called Mollie Clow.

"(h) That Ray McLane and A. H. McLane were adults and above the age of 21 years, prior to February 4, 1915.

"(5) That Elizabeth A. Clow was the owner of block 13, at the time of her death.

"That Elizabeth A. Clow in her last will and testament devised the block of land in controversy to her daughter Alice Clow. That the said Elizabeth A. Clow made this devise to her daughter Alice Clow by reason and because of an agreement between herself and Alice Clow that her said daughter would use and occupy the same during her lifetime and at her death she, the said Alice Clow, would convey the same to the city of Coleman for a public park. That Alice Clow, in order to save the expense of probating said will, secured deeds from all the other heirs of Elizabeth A. Clow, to wit, Mary McLane, A. L. McLane, and Ray McLane, to herself, conveying the land in controversy to her, and that said heirs as such made the conveyance to vest title under said will in said Alice Clow because of said will and to save expense of probating same, which deed was dated September 3, 1915, and fully recited the purpose of said conveyance.

"(6) That thereafter, to wit, on January 9, 1919, Alice Clow, believing at the time that she had but a short time to live and to fulfill her agreement with her mother, Elizabeth A. Clow, executed a general warranty deed to the land in controversy, said block 13 to the city of Coleman, and also at the same time executed a general warranty deed conveying all the balance of her property to her sister Mary Clow McLane; that she thereupon delivered said deed to J. P. McCord, with instructions to hold same and at her death deliver the deed for

block 13 to the city of Coleman, and the other deed to Mary McLane; that said delivery to J. P. McCord was unconditional and without reservations of any kind, and that after the death of Alice Clow said deed was delivered to the city of Coleman and accepted by said city; and that the $10 recited in said deed was never paid.

"(7) That thereafter, on January 22, 1919, Alice Clow executed, acknowledged, and delivered to plaintiffs a general warranty deed to block 13 in controversy; that the cash consideration mentioned in the deed was not paid and that plaintiffs knew of the execution of the previous deed to the city of Coleman, at the time they received the deed, and were not innocent purchasers for value without notice.

"(8) That no undue influence was exercised in connection with the deed of date January 9, 1919, to the city of Coleman, or the execution of the deed dated January 22, 1919, to the plaintiffs.

"Conclusions of Law.

"1. I conclude under the law that no title in fee to the block of land in controversy vested in Alice Clow; that under the agreement between herself and her mother the equitable title to the land vested in the city of Coleman at the death of Elizabeth A. Clow, and that Alice Clow by reason thereof held the land in trust for the city of Coleman with the right to use and enjoy same during her natural life, and that she, therefore, had no title to convey to plaintiffs.

"2. I further conclude, if any title ever vested in Alice Clow, that full title to the land in controversy vested in the city of Coleman under the deed delivered to J. P. McCord, said delivery being made unconditionally and without any reservations whatever, and that after being so delivered, Alice Clow could not convey any title to plaintiffs by her deed to them.

"I therefore rendered judgment for the defendant."

For the purpose of showing common source of title, and for no other purpose, the plaintiffs put in evidence the deed from Alice Clow to the city of Coleman, which reads as follows:

"The State of Texas, County of Coleman.

"Know all men by these presents:

"That I, Alice Clow, a feme sole, of the county of Coleman, state of Texas, for and in consideration of the sum of ten & No/100 dollars to me paid by the city of Coleman, a corporation, of the county of Coleman, state of Texas, and for the further consideration that the property hereinafter described shall be used for park purposes and which park shall be designated by said city of Coleman and named 'Clow Park,' have granted, sold and conveyed and by these presents do grant, sell and convey, unto the said city of Coleman, of the county of Coleman, state of Texas, all that certain lot or parcel of land situated in the town of Coleman, county of Coleman, state of Texas, and being block No. 13, Thirteen, in Clow's addition No. 1, to said town of Coleman, as same appears upon the plat of said addition of record in the deed records, in said Coleman county, to which plat and the record thereof reference is here made for better description of the property herein conveyed.

"This grant of the aforesaid property to said city of Coleman to be in perpetuity if the same shall be used for park purposes, but if the said property shall cease to be used as a public park, then, in that event, the said property above named shall revert to my heirs or assigns.

"This grant is made to fulfill a request of my deceased mother, Elizabeth A. Clow, and was a matter often discussed between us during her lifetime, and was also a desire of the undersigned.

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said city of Coleman, a corporation, heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said city of Coleman, a corporation, heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at Coleman, this 9th day of January, A. D. 1919. Alice Clow.

"Witnesses at request of grantor: D. A. Paddleford."

The trial court rendered judgment to the effect that the plaintiffs take nothing by their suit against the defendant, and that the defendant, upon its cross-action against the plaintiffs, recovered the property in controversy, and also recover from the plaintiff E. A. Temple, as Bishop and as Trustee of the church located at Coleman, Tex., the sum of $447.58, as rents, with interest on the same at the rate of 6 per cent. from the date of the judgment.

The plaintiffs have appealed, and have presented the case in this court upon a typewritten brief, apparently conforming to the recent changes made by the Supreme Court in the rules regulating briefs, and covering 115 typewritten pages. The transcript contains only 43, and the statement of facts only 80, and appellee's brief only 25, typewritten pages. Thus, it will be seen that appellants' brief is the most voluminous document connected with the case. This statement is not intended as a criticism of appellants' counsel, but merely as an illustration of the result which may follow from the recent changes made concerning the preparation of briefs.

Opinion

In appellants' brief many questions are presented, some of which are both interesting and important; but the docket of this court is in such condition as to preclude an extended consideration in this opinion of many of the questions so ably presented by appellants' counsel. As a matter of fact, the case should, and doubtless will, be carried to the Supreme Court, where it will be finally decided by the tribunal provided by our judicial system for the final determination of important questions of law; and for this reason, in connection with the one already given, we shall not attempt to discuss all the questions rais-

ed in appellants' brief. Suffice it to say that all the questions presented and not dealt with in this opinion have received careful consideration, not only of the writer, but of the other members of the court in the consultation room.

[1] It is earnestly urged in behalf of appellants that the judgment for appellee should be reversed because the latter did not offer in evidence the deed by Alice Clow to the city of Coleman, after the same had been offered and read in evidence by appellants for the purpose of showing common source of title.

The testimony of J. P. McCord, who prepared the deed, and who had the original deed before him while he was testifying, sufficiently established the execution and contents of that instrument, and rendered it unnecessary for the city of Coleman to offer the deed itself in evidence as part of its chain of title. Boyd v. Miller, 22 Tex. Civ. App. 165, 54 S. W. 411. Writ of error denied by Supreme Court, 93 Tex. 725, 55 S. W. xvi; Long v. Garnett, 59 Tex. 229; Brown v. Lessing, 70 Tex. 544, 7 S. W. 783; Mensing v. Cardwell, 33 Tex. Civ. App. 16, 75 S. W. 347.

[2] Appellants' suit being brought in the form of an action of trespass to try title, and the defendant having filed a plea of not guilty and a special plea in response to that action, it is contended that reversible error was committed by the trial court in not restricting the defendant so as to exclude any testimony not admissible under the special plea referred to. There might be merit in that contention were it not for the fact that the defendant filed a cross-action for the purpose of obtaining a judgment against the plaintiffs for the land in controversy and for rents, and in that cross-action the city of Coleman, who was the defendant in the suit brought by the plaintiff, was itself the plaintiff, and the plaintiffs in the first suit were defendants in the latter suit. The evidence objected to was admissible in support of appellee's cross-action against appellants, and therefore we rule against them concerning the admissibility of that testimony.

[3] We also overrule appellants' contention upon the question of revocation. The execution and delivery to J. P. McCord of the deed by Alice Clow to the city of Coleman, without any reservation, and with the intent at the time to vest title to the property in the city of Coleman, to take effect upon her death, and with the instructions to McCord to deliver the deed at her death, vested title in the city of Coleman as of the date of the deed after the death of the grantor, Alice Clow; and Alice Clow had no power to revoke such title. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Griffis v. Payne, 92 Tex. 293, 47 S. W. 973; Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 5 A. L. R. 1660;

Stevens v. Haile (Tex. Civ. App.) 162 S. W. 1025; Lovenskoild v. Casas (Tex. Civ. App.) 196 S. W. 629; Tex. Pac. Coal & Oil Co. v. Bruce (Tex. Civ. App.) 233 S. W. 535; Eckert v. Stewart (Tex. Civ. App.) 207 S. W. 317; Earl v. Mundy (Tex. Civ. App.) 227 S. W. 972.

[4, 5] We also rule against appellants upon the question of consideration. The obligation of Alice Clow to carry out the wishes of her mother by conveying the property to the city of Coleman created a trust in favor of the latter which could not be defeated by any act of Alice Clow; and therefore the deed by which she undertook to convey the property to and for the benefit of appellants was unavailing, and could not defeat the right of the city of Coleman to the property. O'Hara v. Dudley, 95 N. Y. 403, 47 Am. Rep. 53; Ransdel v. Moore, 153 Ind. 417, 53 N. E. 771, 53 L. R. A. 753; Trustees of Amherst College v. Ritch, 151 N. Y. 323, 45 N. E. 876, 37 L. R. A. 305; Carver v. Todd, 48 N. J. Eq. 102, 21 Atl. 943, 27 Am. St. Rep. 466; Koefoed v. Thompson, 73 Neb. 128, 102 N. W. 268; Bartlett v. Bartlett, 15 Neb. 593, 19 N. W. 691.

In O'Hara v. Dudley, the court said:

"If anything is rendered certain by the evidence it is that the testatrix made the absolute devise and bequest upon the suggestion of a necessity therefor by Judge McCue, and upon the understanding that he and his associates would faithfully and honorably carry out her expressed intentions. If we say that McCue made no such promise, that he came under no such honorable obligation, then we must say that the testatrix was misled into a false belief, upon which, as true, she unmistakably acted. For it is not possible to doubt that if the legatees had said we will not promise; we will do as we please; we will not be even honorably bound not to take this money for ourselves, the absolute bequest would never have been made. It matters little that McCue did not make in words a formal and express promise. Everything that he said and everything that he did was full of that interpretation. When the testatrix was told that the legal effect of the will was such that the legatees could divert the fund to their own use, which was a statement of their power, she was told also that she would only have their honor and conscience on which to rely, and answered that she could trust them; which was an assertion of their duty. Where in such case the legatee, even by silent acquiescence, encourages the testatrix to make a bequest to him to be by him applied for the benefit of others, it has all the force and effect of an express promise. Walgrave v. Tebbs, 2 K. & J. 321; Schultz's Appeal, 80 Penn. St. 405. If he does not mean to act in accord with the declared expectation which underlies and induces the devise, he is bound to say so, for his silent acquiescence is otherwise a fraud. Russell v. Jackson, 10 Hare, 204."

In Trustees of Amherst College v. Ritch, above cited, it is said:

"On the other hand, if the testator is induced either to make a will or not to change one

after it is made, by a promise, express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created, and equity will compel him to apply property thus obtained in accordance with his promise. O'Hara v. Dudley, 95 N. Y. 403; Brown v. Lynch, 1 Paige, 147; Dowd v. Tucker, 41 Conn. 197; DeLaurencel v. DeBoom, 48 Cal. 581; Browne v. Browne, 1 Har. & J. 430; Church v. Ruland, 64 Pa. St. 442; Towles v. Burton, 24 Am. Dec. 409; McLellan v. McLean, 2 Head, 684; Russell v. Jackson, 10 Hare, 204; Thynn v. Thynn, 1 Vern. 296; Reech v. Kennegal, 1 Ves. Sr. 124; Wallgrave v. Tebbs, 2 Kay & J. 321; McCormick v. Grogan, L. R. [4 H. L.] 82. The trust springs from the intention of the testator and the promise of the legatee. The same rule applies to heirs and next of kin who induce their ancestor or relative not to make a will by promising, in case his property falls to them through intestacy, to dispose of it, or a part of it, in the manner indicated by him. Williams v. Fitch, 18 N. Y. 546; Grant v. Bradstreet, 87 Me. 583 [33 Atl. 165]; Gilpatrick v. Glidden, 81 Me. 137 [16 Atl. 464]. The rule is founded on the principle that the legacy would not have been given, or intestacy allowed to ensue, unless the promise had been made; and, hence, the person promising is bound in equity, to keep it, as to violate it would be fraud. While a promise is essential it need not be expressly made, for active co-operation or silent acquiescence may have the same effect as an express promise. If a legatee knows what the testator expects of him, and, having an opportunity to speak, says nothing, it may be equivalent to a promise, provided the testator acts upon it. Whenever it appears that the testator was prevented from action by the action or silence of a legatee, who knew the facts in time to act or speak, he will not be permitted to apply the legacy to his own use when that would defeat the expectations of the testator. * * * As was well said in Wallgrave v. Tebbs, supra: 'Where a person knowing that a testator, in making a disposition in his favor, intends it to be applied for purposes other than his own benefit, either expressly promises or by silence implies that he will carry the testator's intention into effect, and the property is left to him upon the faith of that promise or undertaking, it is in effect, a case of trust; and in such a case the court will not allow the devisee to set up the statute of frauds, or rather the statute of wills, by which the statute of frauds is now in this respect superseded, and for the reason that the devisee by his conduct has induced the testator to leave him the property; and, as Lord Justice Turner says in Russell v. Jackson, no one can doubt that, if the devisee had stated that he would not carry into effect the intentions of the testator, the disposition in his favor would not have been found in the will. But in this the court does not violate the spirit of the statute, but, for the same end—namely, prevention of fraud—ingrafts the trust on the devise by admitting evidence which the statute would in terms exclude, in order to prevent a party from applying property to a purpose foreign to that for which he undertook to hold it.'"

In Ransdel v. Moore, supra, the Supreme Court of Indiana delivered an elaborate and forceful opinion, from which we quote as follows:

"'We do not mean, however, that it is essential to the upholding of such a trust that a devisee should have been an active agent in procuring the devise to be made in his favor; for the great current of English authorities during the last two centuries as well as that of this country, holds that, if either before or after making of the will, the testator makes known to the devisee his desire that the property shall be disposed of in a certain legal manner other than that mentioned in the will, and that he relies upon the devisee to carry it into effect; and the latter by any words or acts calculated to, and which he knows do in fact cause the testator to believe that the devisee fully assents thereto and in consequence thereof the devise is made, but after the decease of the testator the devisee refuses to perform his agreement, equity will decree a trust and convert the devisee into a trustee, whether, when he gave his assent, he intended fraud or not, the final refusal having the effect to consummate a fraud.' In Parker v. Urie's Ex'rs, 21 Pa. St. 305, Thomas Dries, on his deathbed requested his father, his only heir at law, to pay Thomas D. Parker $500 out of his estate, which the father promised to do. The father survived the son, but died without complying with his promise. Held, that the promise could be enforced against his estate. The court said: 'Where one on his deathbed expresses a wish to his heir at law that certain persons, whom he names, shall receive of his estate specified articles or sums of money, as gifts from him, and the heir promises him that his request shall be fulfilled, the necessary implication is, that the promise is to be performed after the death of the promisee, and that the consideration is, that the promisor shall succeed to his estate under the intestate laws. * * * If the promisee, relying upon the promise, make no other provision, by will or otherwise, for the objects of his bounty, but die intestate, thus leaving his estate to fall into the hands of the heir, to an amount greater than the specific donations, the heir is bound, in conscience and in law to fulfill the contract. If the promise be made by a father to a son, the moral obligation is strengthened by reason of the existing relation, and the confidence which the one would naturally repose in the other.' The English doctrine declared in the foregoing cases has also been adopted and approved in the following cases: Williams v. Fitch, 18 N. Y. 546; O'Hara v. Dudley, 95 N. Y. 403, 47 Am. Rep. 53; Hoge v. Hoge, 1 Watts (Pa.) 163, 215, 216, 26 Am. Dec. 52, and note p. 60; Jones v. McKee, 3 Pa. St. 496, 45 Am. Dec. 661, and note p. 665; McKee v. Jones, 6 Pa. St. 425; Church v. Ruland, 64 Pa. St. 432; Schultz's Appeal, 80 Pa. St. 396; note to Thompson v. White, 1 Am. Dec. p. 258; Glass v. Hulbert, 102 Mass. 24, 39, 40, 3 Am. Rep. 418, 430, 431; Olliffe v. Wells, 130 Mass. 221, 224, and cases cited; Towles v. Burton Rich. Eq. Cases (S. C.) 146, 24 Am. Dec. 409, and note pp. 413–417; Williams v. Vreeland, 29 N. J. Eq. 417, 32 N. J. Eq. 135, 734, and cases cited in note pages 135–145; Ragsdale v. Ragsdale, 68 Miss. 92, 8 South. 315, 24 Am. St. 256, and note p. 263, 11 L. R. A. 316; Curdy v. Berton, 79 Cal. 420, 21 Pac. 858; 12 Am. St. 157, 5 L. R. A. 189; note to Gil-

patrick v. Glidden, 2 L. R. A. 662. 16 Atl. 464; note to Dowd v. Tucker, 14 Am. Law Reg. (N. S.) 482; note to Gore v. Clark, 20 L. R. A. 465–471, 16 S. E. 614. See authorities cited in Orth v. Orth, 145 Ind., pp. 184, 197, 198, 32 L. R. A. 298. See, also, Arnold v. Cord, 16 Ind. 177; Teague v. Fowler, 56 Ind. 569; Hunt v. Elliott, 80 Ind. 245, 258, 41 Am. Rep. 794; Scheffermyer v. Schaper, 97 Ind. 70, 73; Rector v. Shirk, 92 Ind. 31, 33, 34; Butt v. Butt, 91 Ind. 305, 307–310; Piper v. Hoard, 107 N. Y. 73, 13 N. E. 626, 1 Am. St. 789; Wood v. Rabe, 96 N. Y. 414, 426, 48 Am. Rep. 640; Ryan v. Dox, 34 N. Y. 307, 90 Am. Dec. 696; Larmon v. Knight, 140 Ill. 232, 29 N. E. 1116, 33 Am. St. 229, and note p. 233; Nordholt v. Nordholt, 87 Cal. 552, 26 Pac. 599, 22 Am. St. 268; Brikson v. Brikson, 75 Cal. 525, 17 Pac. 698, 7 Am. St. 189; Cutler v. Babcock, 81 Wis. 195, 51 N. W. 420, 29 Am. St. 882, and note p. 890; Laing v. McKee, 13 Mich. 124, 87 Am. Dec. 728, and note p. 740; Morey v. Herrick, 18 Pa. St. 123, 128, 129; Beegle v. Wentz, 55 Pa. St. 369, 373, 374, and cases cited, 93 Am. Dec. 762; Faust v. Haas, 73 Pa. St. 295, 300, 301; Boynton v. Housler, 73 Pa. St. 453, 457; Wolford v. Herrington, 73 Pa. St. 311, 313, 15 Am. Rep. 548; Brown v. Doane, 86 Ga. 32, 11 L. R. A. 381, 12 S. E. 179, and note; Bennett v. Harper, 36 W. Va. 546, 15 S. E. 143."

[6] Appellants' contention that a trust must arise at the time the title passes applies only to resulting trusts, and not to express trusts like the one involved in this case. Smalley v. Paine, 62 Tex. Civ. App. 52, 130 S. W. 739; Henderson v. Rushing, 47 Tex. Civ. App. 485, 105 S. W. 840.

[7] Nor can we sustain appellants' contention concerning the failure to have the will of Elizabeth Clow probated. Alice Clow having received the property under and by reason of the will, and having subsequently received from the other heirs conveyances which vested in her full title, it was not necessary to have the will probated to enable her to carry out the trust. Harris v. Horwell, Gilb. Eq. 11; Addington v. Cann, 3 Stk. 141; Rockwood's Case, Cro. Eliz. 164; Chester v. Urwick, 23 Beav. 407; In re Boyes, 26 Ch. Div. 531; Attorney General v. Cullen, 14 Ir. C. L. 137; Olliffe v. Wells, 130 Mass. 221; Hoge v. Hoge, 1 Watts, 163, 26 Am. Dec. 52; In re Keleman, 126 N. Y. 73, 26 N. E. 968; Williams v. Fitch, 18 N. Y. 546. The failure of Alice Clow to have the will probated does not affect the trust in favor of the city of Coleman, and the latter can still have the will probated, if it desires to do so. Ryan v. T. & P. Ry. Co., 64 Tex. 239.

[8] The failure of Alice Clow, whose duty it was to probate the will, if probation was necessary for the protection of the beneficiary of the trust, could not be urged by Alice Clow and cannot be urged by appellants, who claim under her, not as innocent purchasers, but as grantees in a deed of gift; because as between them and the city of Coleman, the beneficiary in the trust, equi-

ty will treat that as having been done which should have been done. Monroe v. Buchanan, 27 Tex. 241; Red River Co. Bank v. Higgins, 72 Tex. 66, 9 S. W. 745; Montgomery v. Truehart (Tex. Civ. App.) 146 S. W. 284.

The foregoing views, which are sustained by the weight of authority, support the conclusions of law announced by the trial court. Some other questions are presented in appellants' brief, but after due consideration they are decided against appellants.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.