## AMERICAN TRUST & SAVINGS BANK v. WHITAKER. (No. 2098.)

Court of Civil Appeals of Texas. El Paso.
Jan. 12, 1928.

Rehearing Denied Feb. 2, 1928.

1. **Chattel mortgages** ⬦17—**Chattel mortgage by joint owner purchasing interest of another joint owner covering interest in crops to be grown held valid.**

In suit on note given by joint owner purchasing interest of another joint owner of land and indorsed by vendor to bank, chattel mortgage securing note covering interest in cotton and grain to be grown on land *held* valid.

2. **Chattel mortgages** ⬦17—**Mortgage on entire crop by joint owner could not affect potential interest of another joint owner entitled to part of crop as rent.**

Where defendant, owning interest in land to be cultivated by joint owner and another, was entitled to receive as rental one-sixteenth of cotton grown on entire tract during year, mortgage given by joint owner and another, required to cultivate land, to bank, to secure loan could not presently and adversely affect potential interest of defendant.

3. **Chattel mortgages** ⬦104—**Deed, mortgage securing purchase price, and chattel mortgage on crop contemporaneously executed, are to be construed together in determining validity and priority of chattel mortgage.**

In suit on note given by joint owner purchasing interest in land of another joint owner and indorsed to plaintiff bank, conveyance covering all rents from land and mortgage deed on land and chattel mortgage by purchaser on portion of crop securing purchase price were contemporaneous instruments, constituting single transaction, to be construed together as if they were one instrument in determining validity and priority of chattel mortgage.

4. **Chattel mortgages** ⬦138(2)—**Chattel mortgage by joint owner purchasing interest of another joint owner, covering vendor's interest in crop, held superior to prior mortgage executed by purchaser on entire crop.**

Where joint owner, entitled to one-sixteenth share in crop as rental, conveyed interest to another joint owner covering rents, issues, and profits from land and took chattel mortgage covering one-sixteenth interest in crops to be grown on land, effect thereof was to constitute constructive severance of an undivided one-sixteenth interest in crop and pass right and title to such interest to purchaser subject to chattel mortgage lien on crops in vendor's favor, and hence such mortgage had priority over mortgage previously given by purchaser on entire crop to bank, regardless whether bank had actual notice of chattel mortgage to vendor, and regardless whether land and right to rentals passed to purchaser as her separate estate or community property.

5. **Chattel mortgages** ⬦169—**Delivery of gin yard tickets for cotton to bank claimed to have converted cotton held symbolical delivery of cotton.**

In action involving question whether bank holding mortgage on cotton was liable to mortgagee under mortgage entitled to priority for conversion of cotton covered by mortgage having priority, delivery of gin yard tickets for cotton to bank was symbolical delivery of cotton itself.

6. **Chattel mortgages** ⬦178(3)—**Evidence of control exercised by mortgagee over sale and proceeds of mortgaged cotton rendered bank liable to mortgagee having priority for conversion of interest in cotton.**

In action involving question whether bank holding mortgage on cotton was liable to mortgagee under mortgage entitled to priority for conversion of cotton covered by mortgage having priority, evidence showing symbolical and constructive delivery of cotton by mortgagors to bank and exercise by bank of control over sale of cotton and disposition of proceeds by mortgagors without knowledge or consent of mortgagee having priority rendered bank liable to such mortgagee as for conversion of interest in cotton covered by his mortgage.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Appeal and error ⊜⊃839(1)—Proposition affecting only defendant not affected by judgment appealed from cannot be considered.**

Where writ of error was not presented from any portion of judgment as it affected one defendant, matter presented by proposition affecting such defendant is not before Court of Civil Appeals for revision.

Error from District Court, El Paso County; P. R. Price, Judge.

Suit by the El Paso National Bank against E. M. Whitaker and another, in which defendant named vouched in the American Trust & Savings Bank. Judgment for plaintiff and for defendant named against the American Trust & Savings Bank, and such party brings error against defendant named alone. Affirmed.

J. L. Rasberry and W. S. Berkshire, both of El Paso, for plaintiff in error.

Goldstein, Smith & Potash, of El Paso, and Ed. M. Whitaker, of Midland, for defendant in error.

HIGGINS, J. The El Paso National Bank brought this suit against Seth B. Orndorff, as maker, and E. M. Whitaker, as indorser, of a promissory note dated March 26, 1925, in the principal sum of $2,500, payable to the order of Whitaker, executed by Orndorff and his wife, Mattie Dee Orndorff.

Whitaker vouched in the American Trust & Savings Bank and asked for judgment over against it.

The case was tried without a jury and judgment rendered in favor of the plaintiff against Orndorff and Whitaker for the balance of $2,651.92, due upon the note and in favor of Whitaker for like amount over against the American Trust & Savings Bank, from which the latter prosecutes this writ of error, naming Whitaker only as the party adversely interested.

In the early part of 1924 Whitaker and the Orndorffs acquired jointly a tract of land in Dona Ana county, N. M., known as the Juanita or Shalem ranch, Seth Orndorff owning a one-half interest, Mrs. Orndorff and Whitaker each owning a one-fourth interest. In 1924 and 1925 the land was cultivated in cotton by Seth Orndorff and H. W. Pickard, as partners. In 1924 Whitaker received one-fourth of the cotton grown upon his interest in the land as rent, and was to receive the same rental in 1925.

On February 18, 1925, Orndorff & Pickard executed a mortgage in favor of the American Trust & Savings Bank (hereinafter referred to as the bank) upon all the cotton to be grown by them upon the land in 1925, to secure the payment of two notes of the mortgagors in favor of the bank, each in the principal sum of $5,000, of even date with the mortgage, due November 1, 1925. The mort-

gage also secured any further and additional sum or sums that might be thereafter advanced by the mortgagee up to and not exceeding the sum of $20,000.

At that time Orndorff was negotiating with Whitaker for the purchase of the latter's interest in the land and expected to purchase same, of which fact the bank was advised.

On March 26, 1925, Whitaker conveyed his one-fourth interest in the land to Mrs. Orndorff. Under the law of New Mexico, the presumption is that the title was vested in Mrs. Orndorff as her separate property. Extrinsic evidence of the intention of Seth Orndorff is that it was in fact so intended.

In part payment for the land Orndorff and wife executed the note above mentioned. Its payment was secured by a "mortgage deed" upon the land conveyed executed by Orndorff and wife, and also by a mortgage upon an undivided one-sixteenth interest in all cotton and grain grown upon the Shalem land in 1925. The mortgage deed and chattel mortgage bore even date with the conveyance from Whitaker to Mrs. Orndorff. This chattel mortgage was forthwith duly registered in Dona Ana county, N. M. The Orndorff & Pickard mortgage to the bank previously had been duly registered in said county.

It is impractical to consider and discuss in detail the many assignments and propositions presented by plaintiff in error. Nor is it necessary to do so for the proper disposition of the writ of error is controlled by two primary questions, the first of which relates to the validity of the mortgage taken by Whitaker from Orndorff and wife upon one-sixteenth of the cotton grown in 1925, upon the Shalem land, and its priority over the mortgage taken by the bank from Orndorff & Pickard upon all the cotton grown in 1925, upon the same land.

[1] The opinion of Justice Speer in Bowyer v. Beardon (Tex. Com. App.) 291 S. W. 219, is decisive of the validity of the mortgage taken by Whitaker and, in connection with other well-settled principles of law, establishes its priority. The facts in the case cited were complicated. It is sufficient to say there was involved the validity of a mortgage given by a landlord upon a portion of an unmatured crop, which portion, under the terms of the rental contract, was to become his absolutely.

After referring to the rule that a tenant may mortgage his interest in an unplanted crop, Justice Speer said:

"* * * There is no reason for any distinction between the respective rights of landlord and tenant in such respect. It necessarily follows, if the tenant may mortgage his unplanted crop, the landlord likewise may mortgage a portion of the same crop, which under the terms of a rental contract is to become his absolutely. * * *

"Now, under the facts certified, whether Thompson was to be paid his rentals in cotton or cash, or partly in cotton and partly in cash, the right to receive such payment in any event is property subject to sale and assignment, and likewise subject to chattel mortgage. This being true, we think question No. 1 should be answered that the mortgage was valid.

"In answer to question 2, it must be held that Bowyer was not necessarily the owner of the rents for 1924, merely because he was the owner of the land when such crops were harvested and the rentals became due. It is well settled that crops may be segregated from the land by any definite act showing such intention, thereafter becoming personalty, and as such assignable at will. In the absence of such segregation by the owner, such rentals do go with the land.

"What we have said under question 1 answers question 3. Of course if Thompson, the owner of the land at the time, had such property in the crop rentals that he could mortgage the same, then such mortgage and its registration were valid. His act in executing this instrument amounted to a segregation of the crops and rentals from the land so as to make them personalty subject to chattel mortgage and registration, and, answering 4, this would constitute constructive notice to subsequent purchasers of the land of the lien on such rentals.

"To question 5 we answer the owner of land under rental to another may, upon sale of such land, reserve by verbal agreement the rentals thereafter to become due. This is a segregation by mutual agreement of the rentals from the land."

In this connection, see, also, Sanger Bros. v. Hunsucker (Tex. Civ. App.) 212 S. W. 514.

[2] In the present case Whitaker owned a one-fourth interest in the Shalem land which, in 1925, was to be cultivated by Orndorff & Pickard under a contract, whereby Whitaker was to receive as rental one-sixteenth of the cotton grown upon the entire tract during that year. The mortgage given by Orndorff & Pickard to the bank on February 18, 1925, could not presently and adversely affect the then potential interest of Whitaker in the entire crop to be grown upon the premises.

On March 26, 1925, Whitaker conveyed his one-fourth interest in the land to Mrs. Orndorff, together with the "rents, issues, and profits thereof," etc. Upon the same day Orndorff and wife executed the note sued upon, the mortgage deed upon the land, and chattel mortgage upon one-sixteenth of the crop. The note recites it was secured by mortgage deed lien on the land "this day conveyed by Ed. M. and Elizabeth Whitaker to Mattie Dee Orndorff, more particularly described therein, and also described in a mortgage deed from Seth B. and Mattie Dee Orndorff of even date herewith, which land is in Dona Ana county, state of New Mexico, reference being hereby made to said deed for more specific description of both tracts of land, also secured by chattel mortgage on all cotton and grain to be grown thereon during 1925."

[3] The chattel mortgage covers an undivided one-sixteenth of all cotton and grain to be grown on the Shalem land in 1925. These contemporaneous instruments constituted one transaction, and they are to be construed together as if they were one instrument, as, in substance, they are. 6 R. C. L. 580; Barber v. Herring (Tex. Com. App.) 229 S. W. 472; Vinson v. Carter (Tex. Civ. App.) 161 S. W. 49.

[4] And the effect thereof was to constitute a constructive severance of an undivided one-sixteenth interest in the cotton to be grown upon the land and pass the right and title of Mrs. Orndorff to such interest, subject to the chattel mortgage lien in Whitaker's favor. Whitaker's lien was therefore prior to the lien, if any, of the bank upon such interest.

The validity and priority of Whitaker's mortgage is in no sense dependent upon the question of actual notice to the bank of Whitaker's interest in the land and of the chattel mortgage at the time it was given, but the trial court found that the bank had such notice. This finding is well supported by the evidence, and the assignments attacking the finding are overruled. The question of notice is immaterial for the reason that the interest in the land and crop passed to Mrs. Orndorff, subject to the lien.

Nor is it material whether the land and right to the rentals passed to Mrs. Orndorff as her separate estate or as community property. In either event, the land and rentals passed subject to the mortgage deed and chattel mortgage.

After the executing of the Orndorff & Pickard mortgage in favor of the bank, the latter made an additional advance of $10,000 to the mortgagors, which, together with the two original notes for $5,000 each, was repaid to the bank out of the proceeds of cotton grown upon the Shalem land in 1925 by the mortgagors and lessees, Orndorff & Pickard.

The second controlling question in the case is whether the bank is liable to Whitaker as for conversion of the cotton covered by his mortgage.

The evidence shows that about 548 bales of cotton were grown upon the Shalem land in 1925, which were sold for $44,630.73, and the proceeds deposited with appellant to the credit of Orndorff & Pickard, and checked out by the latter, less $20,000 applied to the payment of their debt to the bank.

Pickard testified:

"I know what was done with the proceeds of it; it went through the American Trust & Savings Bank; it was deposited to the credit of Pickard and Orndorff. * * * Sometimes the buyers would require the tickets, and sometimes they would not." * * *

Seth Orndorff testified:

"I can tell how the cotton from the 71 acres, and cotton from the Shalem ranch, belonging to Mr. Pickard and me in 1925, how the sale of

the cotton was handled. We would turn over all tickets in the bank, the American Trust & Savings Bank, and then I would get the price on it and phone Pickard, and he would tell me to sell it or tell me to hold it until next day, and sometimes he had a price on it, but I don't think he ever had a better price than I did. I would then go and get the ticket from the bank. I think that year I dealt entirely with Henderson, I used to deal with Bob Hoover when he was there. Henderson was vice president of the American Trust & Savings Bank. * * * By 'delivering the tickets' to Mr. Henderson, I mean we would go up to the gin and get the tickets, and bring them in to Henderson. I did not sell all of this cotton, Pickard sold some of it, and I sold some of it, whoever got the best price; I would call up Henderson and tell him what we were offered, and he says: 'We had better let it go.' * * * I did not mix any cotton that came off the 71 acres with the cotton that came off the Shalem ranch only in this way. I had different contracts here on my cotton; sometimes when I did not have enough to finish a contract I said to Henderson: 'Do you mind my using 6 bales of this to fill out my contract?' and then I paid it back. I carried the account in the American Bank in the name of Pickard & Orndorff, but I could not sign a check without Mr. Henderson O. K.'ing it. * * * I did not use any money coming off that place for any other purpose, I was very particular not to use a dime without Henderson saying so. * * * I would walk into Henderson and say: 'I want to take this check over to the First National Bank,' he says: 'Take it over.' I never took a dollar out of that account unless O. K.'d by Henderson. * * * None of these checks were made payable to the American Trust & Savings Bank, Pickard & Orndorff were selling the cotton with Henderson's permission. The American Bank was not selling the cotton, we sold it with Henderson's permission. * * * I used some of that money with their permission, I had personal accounts, things coming up. I told Henderson: 'I want to use this money myself,' and he would give me permission at different times. * * * We had oil bills and things to pay. I would ask Henderson about it, he says: 'You sold this cotton, go pay them.' I think I had a life insurance premium to pay; he says: 'All right, go pay your life insurance,' we were getting along very nicely at that time. * * * The cotton was in the gin yards; we never took actual, physical possession of the cotton. It was all in Dona Ana county, N. M., and then I brought the tickets to the bank. * * *"

[5] The delivery of the gin yard tickets for the cotton was symbolical delivery of the cotton itself. First Nat. Bank v. First State Bank (Tex. Civ. App.) 252 S. W. 1089.

[6] The testimony of Orndorff and Pickard is not controverted by any witness. It shows a symbolical and constructive delivery of the cotton by the mortgagors to the bank, and the exercise by the latter of control over its sale and disposition of its proceeds by Orndorff and Pickard. All of this was done without the knowledge or consent of Whitaker.

This conduct of the bank renders it liable to Whitaker as for conversion of the one-sixteenth of the cotton grown upon the Shalem land covered by his mortgage. Hooser v. G. M. Carlton Bros. (Tex. Civ. App.) 288 S. W. 1095; Hunter v. Abernathy (Tex. Civ. App.) 188 S. W. 269; Mensing Bros. & Co. v. Cardwell, 33 Tex. Civ. App. 16, 75 S. W. 347; Sexton R. & I. Co. v. Sexton, 48 Tex. Civ. App. 190, 106 S. W. 728; Border National Bank v. Campbell & Rosson Com. Co. (Tex. Civ. App.) 248 S. W. 780, reversed upon another point in (Tex. Com. App.) 270 S. W. 539.

In any event, the bank is liable for one-sixteenth of $20,000 of the proceeds applied to the payment of its own debt. But as before stated, we think it should be treated as liable for conversion of one-sixteenth of the entire crop. One-sixteenth of the value of the entire crop exceeds the amount of Whitaker's recovery against the bank.

[7] The tenth proposition affects only Seth Orndorff. The writ of error was not prosecuted from any portion of the judgment as it affected Orndorff. The matter presented by the proposition therefore is not before this court for revision.

All assignments and propositions submitted by the plaintiff in error are overruled, and the judgment of the lower court is affirmed.